

Alfred W. Crump, Ward & Crump, Reading, Pa., for movant.

Socrates J. Georgeadis, Wyomissing, Pa., for debtor.

Alan M. Seltzer, Ryan, Russell & McConaghy, Reading, Pa., Trustee.

## In re Mark Allen WEIDENHAMMER, Debtor.

## Bankruptcy No. 87–02686 T.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 11, 1988.

### MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Karen L. Weidenhammer ("movant") has requested relief from the automatic stay imposed by 11 U.S.C. § 362(a) to allow her to proceed with the filing of a contempt petition based on nonpayment of support in

---

a domestic relations action ("state court action") pending against her husband, Mark Allen Weidenhammer ("debtor"). We will grant relief from stay based on 11 U.S.C. § 362(b)(2) and 11 U.S.C. § 362(d)(1).

Although we have not been made privy to all the details of the state court action, we do know that debtor no longer resides with movant. We also know that on September 17, 1986, a state court judge signed a document captioned "Temporary Agreement for Order of Support," which provided that debtor pay a total of $125.50 per week for support of his two minor children. It also provided "Def. will be responsible to pay the mortgage & utilities at the Pltf. residence." The parties do not dispute that the "Pltf. residence" is the home in which movant currently resides with the parties' two minor children, located at 1901 N. 15th Street, Reading, Pennsylvania ("home").

The holders of the first mortgage on the home are Norman E. and Edith K. Lowe. Debtor filed his chapter 7 petition on June 2, 1987. The Lowes filed a motion for relief from the automatic stay on October 27, 1987, alleging that debtor and movant were in default in a total amount of $67,-794.57. The Lowes, debtor and movant submitted a stipulated settlement of this matter, which was approved by this Court on December 14, 1988, and which provided that debtor and movant would have until February 15, 1988 to "submit a proposal, individually or jointly," to resolve the issues raised in the Lowes' motion, and that barring submission of an acceptable proposal, the Lowes could proceed without further § 362 relief to recover the amount owed and foreclose upon the home.

On December 21, 1987, no doubt in response to the stipulated settlement, movant filed her motion for relief from the automatic stay, requesting permission to file a petition for contempt in the state court proceeding in order to allege debtor's failure to abide by the terms of the "Temporary Agreement for Order of Support."

Debtor and movant have stipulated that debtor has not made any "substantial" mortgage or utility payments for the home, and that debtor owed support arrears of $1,358.50 as of January 13, 1988.

We are fast approaching the 15th day of February, and the parties have not submitted a proposal to the Lowes. The Lowes will undoubtedly exercise their right to foreclosure. It is against this scenario that movant argues that we should grant her relief from the stay, presumably so that she can attempt to force debtor through the state court proceedings to pay the support, utilities and, most importantly, the mortgage arrears, thus staving off the imminent foreclosure. Movant argues that the debts in question are non-dischargeable under 11 U.S.C. § 523(a)(5), and that movant should not be left homeless.

Debtor admits that the automatic stay embodied in § 362(a) does not apply to all collection actions. Instead, he argues that we should take no action so that debtor can sue movant[1] if the state court contempt petition exceeds the scope of the § 362(b) exception. Neither party cites any case law or supporting authority.

█ The Code clearly states that the automatic stay does not apply to "... the collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b). Thus, the first question we must address is whether movant's contemplated contempt petition constitutes an action to collect "support." Debtor does not argue this point, and we have no doubt that child support payments fit within this category, as the domestic relations courts of Berks County consider the actual needs of the children in setting support orders. It is more difficult to find a niche for utility and mortgage payments within the § 362(b) concept of support, but "(we) certainly agree that the payment of obligations secured by mortgages involves the very essence of family support and

---

1. Debtor fails to give credit where credit is due. Movant undoubtedly wanted to avoid allegations that she had violated the automatic stay and the issuance of damages pursuant to § 362(h). This Court encourages parties to determine before the fact whether actions violate the automatic stay, in an effort to avoid the scenario described by debtor. *Accord, Barlow v. Brock (In re Brock),* 58 B.R. 797, 14 B.C.D. 161, 166 (Bankr.S.D.Ohio 1986).

maintenance." *Miller v. Miller (In re Miller),* 34 B.R. 289, 293 (Bankr.E.D.Pa.1983). *Accord, Allshouse v. Allshouse (In re Allshouse,* 34 B.R. 512, 514 (Bankr.W.D.Pa. 1983), and cases cited therein.[2] Although the *Miller* decision suggests that we review a number of factors to determine whether a debt is truly in the nature of support, we find such analysis unnecessary in the instant case. Unlike the majority of courts dealing with this question, we need not determine whether the apportionment of assets and liabilities incident to a divorce has created a nondischargeable property settlement[3] as opposed to a dischargeable support obligation. Here, the parties are not yet divorced and we find that the state court order was clearly what it was captioned: a "Temporary Agreement for Order of Support." Thus, the proposed contempt petition, targeted as it would be on the failure to pay support, including the mortgage and utilities, meets the first part of the § 362(b) test.

■ The caveat in § 362(b) is that actions to collect support are not covered by the automatic stay as long as the collection will be made from property that is *not* property of the estate. 11 U.S.C. § 362(b). That key phrase is defined to include all legal or equitable interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a)(1). Property of the estate does not include property acquired by the debtor after[4] the commencement of the

case, with the exception of property recovered by the trustee under 11 U.S.C. §§ 542, 543, 550, or 723. *See* 11 U.S.C. § 541(a)(3). "Thus, in a chapter 7 case, wages earned prior to the filing would be property of the estate, while those earned after that date would not be included ..."[5] *Mack v. Commonwealth,* 46 B.R. 652, 655 (Bankr.E.D. Pa.1985), *See generally, Murray v. Murray (In re Murray)* 31 B.R. 499 (Bankr.E. D.Pa.1983) (automatic stay was modified to permit wife to collect from debtor's non-exempt property *or* from property acquired by debtor after commencement of the case, but *not* with regard to realty held as tenants in common with debtor, because such property was property of the estate).

Underlying this distinction is an extremely logical policy consideration:

> Since the automatic stay is one means of protecting the debtor's discharge and alimony, maintenance and support obligations are excepted from discharge, staying collection of them, when not to the detriment of other creditors (because collection is against property that is not property of the estate), does not further that goal.

*Bkr.L.Ed.Code* Commentary & Analysis, § 15–31, p. 46, *citing* H.Rept. No. 95–595, pp. 342–343. Therefore, if movant were to proceed in state court to collect from debtor's post-petition earnings, and/or from any of the property he lists as exempt on

---

**2.** Identifying the exact nature of payments is usually done in the context of § 523(a)(5) complaints to determine dischargeability. *See e.g., In re Miller,* 34 B.R. 289; *In re Allshouse,* 34 B.R. 512. Case law implies, however, that the term "alimony, maintenance or support" refers to the same type of payments in § 523(a)(5) and § 362(b)(2) settings. This is because "... nondischargeable debts, and more particularly debts for alimony, maintenance and child support are not categorically exempted from the automatic stay ...," but are exempted only to the extent that movant seeks collection from non-estate property. *In re Mack,* 46 B.R. 652, 656 & n. 6 (Bankr.E.D.Pa.1985).

**3.** Under § 523(a)(5), courts are often called upon to interpret "hold harmless" clauses in property settlements through which one spouse agrees to pay off a given joint marital debt. *See e.g., In re Brock,* 58 B.R. 797, 14 B.C.D. 161, 162.

**4.** By contrast, in chapter 13 cases post-petition income can become property of the estate. 11 U.S.C. § 1306. Thus, most § 362(b) collection efforts are barred in chapter 13 cases since even those collections targeted only at post-petition income are barred by the stay. *See generally, McCray v. McCray (In re McCray),* 62 B.R. 11 (Bankr.D.Colo.1986); *In re Mack* 46 B.R. 652; *Bernstein v. Nagle (In re Bernstein),* 20 B.R. 595, Bankr.L.Dec. para. 68,825 (Bankr.M.D.Fla. 1982).

**5.** A chapter 11 debtor's post-petition earnings are viewed in the same fashion and are not considered property of the estate. *See e.g., Summerlin v. Summerlin (In re Summerlin),* 26 B.R. 875 (Bankr.E.D.N.C.1983).

his Schedule B-4, such action would not violate the automatic stay.

We would undoubtedly reach the same conclusion had we analyzed[6] the issue under 11 U.S.C. § 362(d)(1), which requires us to grant relief from the stay "... for cause, including the lack of adequate protection of an interest in property of such party in interest." *See generally, In re MacDonald*, 755 F.2d 715, 717, Bankr.L. Rep. para. 70,312 (9th Cir.1985) (affirming bankruptcy appellate panel's use of the discretionary "cause" standard after court allowed debtor's ex-wife to return to state court to modify final alimony and property award); *Flagg v. Flagg (In re Flagg)*, 17 B.R. 677, 7 Bankr.L.Dec. para. 68,624 (Bankr.E.D.Pa.1982) (allowing wife relief under § 362(d)(1) to proceed with divorce action). Conceptually, this case is similar to those cases in which courts have held that a failure to make mortgage payments alone constitutes § 362(d)(1) cause, irregardless of the existence of an equity cushion. *See e.g., Fed'l Nat'l Mortgage Assn. v. Peltzer (In re Peltzer)*, 15 B.R. 73, 5 C.B.C.2d 579 (Bankr.E.D.Pa.1981). Like a mortgage holder, movant in this case complains that payments to her have been skipped, the ultimate result of which may be that movant and the minor children are left homeless. This is significant because in assessing requests for relief for "cause" we must consider the policies underlying the Code as well as the competing interests of movant, debtor and other parties in interest. *In re Borbridge*, 81 B.R. 332, 335 (Bankr.E.D.Pa.1988). We do not think that debtor's right to a fresh start would be prejudiced by allowing movant to proceed against non-estate property. Ultimately he will have to face these unpaid obligations, either now or after movant files a § 523(a)(5) complaint, under which the debt may be held non-dischargeable. As one court has noted, "(i)t is also certain that the public policy considerations behind the Bankruptcy Code in giving the debtor a

fresh start does not mean that this should be done at the expense of his familial duties." *Stelly v. Brearax (In re Brearax)* 8 B.R. 218, 220 3 C.B.C.2d 604, Bankr.L. Dec. para. 67,766 (Bankr.W.D.La.1981).

As discussed earlier, debtor is concerned that he will in some way lose the right to request § 362(h) sanctions if movant's state court action ultimately exceeds the scope of § 362(b). Our holding that movant may proceed with attempts to collect from non-estate property in no way prejudices debtor's right to come back into this Court if a violation of § 362 does occur. An appropriate order follows.

---

6. The parties have not presented this motion on the basis of § 362(d)(1), and we need not decide this particular point in light of our holding regarding § 362(b)(2). Although a movant under § 362(d)(1) would be required to meet a stringent burden of proof, *see e.g., In re Borbridge*, 81 B.R. 332, 335 (Bankr.E.D.Pa.1988), the operative facts in this case are not in dispute.