**In the Matter of Ralph M. ROGERS, Debtor.**

**Ralph M. ROGERS, Plaintiff,**

v.

**Sara Jane OVERSTREET and Alan Connell, Attorney, Defendants.**

**In the Matter of Ralph M. ROGERS, Debtor.**

**Ralph M. ROGERS, Plaintiff,**

v.

**Sara Jane OVERSTREET, Defendant.**

**Bankruptcy No. N93–10256–WHD. Adv. Nos. 93–1012N, 93–1044N and 93–1059N.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Jan. 20, 1994.

Ralph M. Rogers, pro se.

Alan Jackson, Glover & Davis, P.A., Newnan, GA, for defendants Sara Jane Overstreet and Alan Connell.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the three adversary proceedings commenced by Ralph M. Rogers (hereinafter "Debtor") against Sara Jane Overstreet and Alan W. Connell (collectively hereinafter "Defendants"). The Debtor brought these actions alleging the Defendants violated the automatic stay of 11 U.S.C. § 362 on three separate occasions. The Court finds that the issues contained herein arise in a core proceeding within the meaning of 28 U.S.C. § 157(b). A hearing was held on November 18, 1993, after which the Court took these matters under advisement and gave the parties twenty days to submit briefs. After careful review of all the testimony given and of the pertinent law, the Court makes its decision based upon the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Debtor and Defendant Overstreet were husband and wife, but their marriage was terminated by decree of the Superior Court of Spalding County, Georgia, on May 2, 1991. As a result of the divorce, the Debtor incurred various support obligations to his former wife. Specifically, the Debtor was required to pay $460.00 per child per month for support and maintenance. Since there were two children from the marriage, the Debtor's monthly payments were $920.00. In addition, the decree obligated the Debtor to pay Overstreet's attorney's fees.[1] This sum amounted to $1,150.00 and was payable in installments of $100.00 per month. Moreover, the Debtor was ordered to satisfy a Sears bill of $1,934.00. Finally, the decree required the Debtor and Overstreet to maintain separate medical insurance policies covering the children, and to pay one half each of all the medical expenses not covered by this insurance. Overstreet retained custody of the two children.

Immediately after the divorce decree was entered, Overstreet began experiencing difficulty in collecting these support obligations from the Debtor. In fact, less than four months after the decree, Overstreet was forced to bring a contempt action against the Debtor as he had failed to make payments.[2] The state court in that action found the Debtor to be in contempt for his failure to pay child support as awarded in the decree.

Nevertheless, problems continued with the monthly support payments, and Overstreet filed a second contempt action on August 17, 1992.[3] In response to this action, the Debtor filed a complaint seeking modification of custody and child support.[4] These matters were heard by the Honorable Andrew J. Whalen, Jr., Judge of the Superior Court of Spalding County, Georgia, who entered an Order dated January 19, 1993. By this Order, Judge Whalen refused to decrease the monthly child support obligations owed by the Debtor.

1. Overstreet's attorney in these domestic relations matters was and continues to be Defendant Connell.

2. *Overstreet v. Rogers,* No. 91–V–1223 (Super.Ct. of Spalding County, Georgia, Sept. 13, 1991).

3. *Overstreet v. Rogers,* No. 92–V–1512 (Super.Ct. of Spalding County, Georgia).

4. *Rogers v. Overstreet,* No. 92–V–1588 (Super.Ct. of Spalding County, Georgia).

Judge Whalen noted that at the time of the original decree, the Debtor had an annual income of $45,300.00. As such, his monthly support payments of $920.00 constituted slightly more than twenty percent of his gross income. The state guidelines for establishing support for two children, however, suggest an amount between twenty-three and twenty-eight percent of the parent's income. Since the divorce decree had been entered, the Debtor had received a four percent raise, making his annual income $49,000.00. As a result, his monthly support payments constituted only eighteen percent of his gross income, which was five percent below the state guidelines. Based upon these facts, Judge Whalen denied the Debtor's request to reduce his monthly support obligations.[5]

Judge Whalen then found the Debtor to be in wilful contempt of the original divorce decree for his repeated failure to pay his obligations. Specifically, the state court found the Debtor to be deficient in the following amounts:

| | |
|---|---|
| Child Support | $4,625.00 |
| Medical Expenses | 390.00 |
| Sears Bill | 1,934.00 |
| Attorney's fees from original decree | 325.00 |
| Attorney's fees for contempt action | 250.00 |
| TOTAL | $7,524.00 |

As punishment for the Debtor's contempt, Judge Whalen ordered that he be incarcerated immediately in the public jail of Spalding County, Georgia, until further order of the state court. The court, however, gave the Debtor fifteen days within which to purge himself of this contempt by paying into the registry of the Superior Court the sum of $7,524.00 for delivery over to Defendant Overstreet.

The Debtor's fifteen day grace period expired on February 3, 1993. At that time,

Myrtle F. Peeples, Clerk of the Superior Court of Spalding County, Georgia, certified that she had not received the required funds from the Debtor. Faced with imminent incarceration for his wilful contempt of the state court, the Debtor filed a chapter 13 petition in this Court on February 4, 1993, seeking the protection of the automatic stay of 11 U.S.C. § 362. Later that day, however, a deputy of the Spalding County sheriff's department arrested the Debtor at his residence. In an unsuccessful attempt to prevent his arrest, the Debtor showed the deputy a copy of his bankruptcy filing. Once in jail, the Debtor apparently made repeated attempts to contact Judge Whalen, requesting that he be released in view of his bankruptcy petition, but to no avail. Moreover, Defendant Connell, in his capacity as Overstreet's attorney, received by facsimile a copy of the Debtor's petition. Connell, too, informed Judge Whalen of the petition, but Judge Whalen apparently refused to rescind or modify his Order of January 19, 1993. As a result, the Debtor remained incarcerated.

The Debtor resided in the Spalding County jail until February 19, 1993. At that time, his mother, Barbara S. Rogers, paid the necessary funds to the Clerk of the Superior Court, and the Debtor was released. By Order dated February 22, 1993, Judge Whalen authorized these funds to be paid to Overstreet. Nevertheless, Overstreet did not collect the money at that time.

On February 26, 1993, this Court held an in chambers conference to discuss certain matters of the Debtor's chapter 13 case. In attendance were Defendant Connell, Alan W. Jackson and Randy E. Connell, as attorneys for the Defendants, William T. Johnson, as attorney for the Debtor,[6] and the Chapter 13 Trustee, M. Regina Thomas. At this conference, the parties discussed the funds that Barbara Rogers paid into the registry of the Superior Court, and concluded that they

---

5. Judge Whalen, however, did grant the Debtor's request to drop the medical insurance policy he maintained for the children. The divorce decree was modified so as to require the Debtor and Overstreet to split the costs of one insurance policy and any expenses not covered by this insurance.

6. Sometime prior to June 3, 1993, the Debtor released Johnson as his attorney, and since has pursued this case as a *pro se* debtor.

were not property of the Debtor's estate.[7] Based upon the results of this conference, Overstreet collected the money from the Clerk of the Superior Court in satisfaction of the Debtor's prepetition arrearage.

The domestic relations dispute between the Debtor and Overstreet continued after the Debtor was released from jail. On May 21, 1993, the Debtor commenced an action for contempt and modification of visitation rights in state court.[8] In response to this action, the Defendants filed a counterclaim against the Debtor, alleging he was in arrears of his child support obligations and certain medical payments. Moreover, the Defendants sought an increase in monthly support payments and a modification of visitation rights. The state court found the Debtor to be in contempt for failing to make payments on medical insurance obligations which accrued postpetition. As for prepetition debt, the court found the Debtor to be in arrears in child support payments amounting to $360.00 and insurance premiums amounting to $33.77. In view of the automatic stay, however, the state court took no action to hold the Debtor in contempt for the prepetition debts, and it took no action to enforce its order in any way.

The parties to this domestic relations dispute have not limited their litigious nature to the confines of the state courts. In fact, the Debtor has filed adversary proceedings against the Defendants in this Court, alleging violations of the automatic stay. The Debtor commenced the first action, case number 93–1012N, on February 8, 1993, seeking to have both Defendants held in contempt for having the Debtor incarcerated after the filing of his bankruptcy petition. The second complaint,

case number 93–1044N, was filed on June 3, 1993. By this action, the Debtor claims Defendant Overstreet violated the automatic stay when she collected the money Barbara Rogers deposited into the Superior Court to obtain the Debtor's release. The Debtor requests that this Court require Overstreet to turnover this money. Finally, the Debtor commenced another adversary proceeding on August 4, 1993, case number 93–1059N, against both Defendants, alleging their counterclaim to his state court action was a violation of the automatic stay, since it sought to recover prepetition debt.[9]

The Court administratively consolidated these proceedings by Order dated September 24, 1993, after finding that common questions of law and fact underlie these cases. In all these proceedings, the Debtor seeks damages of a compensatory and punitive nature, as well as criminal and civil contempt against the Defendants. In turn, the Defendants argue that their actions did not violate the automatic stay. As such, they request that the Court deny the relief the Debtor seeks.

## CONCLUSIONS OF LAW

### A. The Automatic Stay

■ The success or failure of the Debtor's adversary complaints depends upon whether a violation of the automatic stay occurred. The automatic stay provisions of the Bankruptcy Code are quite broad. In particular, these provisions provide, in part, as follows:

> Except as provided in subsection (b) of this section, a petition filed under section 301,

---

7. The Court notes that the Debtor disagrees that such a conclusion was reached. The Debtor, however, was not present at this conference. Based upon its own recollection of the meeting and the testimony given by the Chapter 13 Trustee, see Tr. at 39–40, the Court declines to accept the Debtor's version of what transpired.

8. Rogers v. Overstreet, No. 93–V–861 (Super.Ct. of Spalding County, Georgia).

9. The Debtor also commenced an adversary proceeding against Judge Whalen on June 3, 1993. Rogers v. Whalen (In re Rogers), No. 93–1045N (Bankr.N.D.Ga.). That proceeding alleged Judge Whalen violated the automatic stay by having the

Debtor incarcerated after the commencement of this case. By that action, the Debtor requested compensatory and punitive damages from Judge Whalen. This Court, however, granted Judge Whalen Summary Judgment by Order dated August 11, 1993, on the grounds the doctrine of judicial immunity prevented the Debtor from bringing such a claim for conduct taken in one's judicial capacity. See Pierson v. Ray, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). The Debtor has appealed this decision, and the matters of that proceeding are currently before the United States District Court for the Northern District of Georgia.

302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; ...

11 U.S.C. § 362(a)(1) & (a)(2). Under these provisions, all proceedings against the debtor and his property are stayed during the pendency of the bankruptcy case. The automatic stay, however, does not allow a debtor to challenge the prepetition conduct of a creditor. Moreover, claims against the debtor that arise postpetition do not come within the scope of § 362(a) since they could not have been brought before the bankruptcy case was commenced. *See In re Petruccelli*, 113 B.R. 5, 6 (Bankr.S.D.Cal.1990).

Despite the broad scope of the automatic stay, however, it does not serve to stay all proceedings involving the debtor. *Heflin v. Heflin (In re Heflin)*, 145 B.R. 560, 562 (Bankr.S.D.Ohio 1992); *In re Shuman*, 122 B.R. 317, 318 (Bankr.S.D.Ohio 1990). In fact, § 362(b) of the Bankruptcy Code expressly provides that certain actions are not stayed by the filing of a petition. Among the acts excepted from the automatic stay is "the collection of alimony, maintenance, or support from property that is *not* property of the estate." 11 U.S.C. § 362(b)(2) (emphasis added). As such, a former spouse's action to collect prepetition support arrearage is not subject to the automatic stay, so long as property of the estate would not be used to satisfy the claim.

■ While § 362(b)(2) provides for an exception to the automatic stay in certain situations, a logical inference from this provision

is that the automatic stay *does* apply to the collection of alimony, maintenance, or support from property that is included in the property of the estate. Therefore, the § 362(b)(2) exception has little application in chapter 13 cases [10] since the term "property of the estate" includes earnings of the debtor acquired after the commencement of the bankruptcy case. 11 U.S.C. § 1306(a). The Eleventh Circuit reached this conclusion in *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 496, 121 L.Ed.2d 434, a case with many factual similarities to the proceedings *sub judice.*

In *Carver*, the chapter 13 debtor's former wife brought a contempt action in state court, after the bankruptcy case had been commenced, against the debtor in an attempt to collect past due obligations arising from a divorce decree and separation agreement. The state court found the debtor to be in contempt and ordered him incarcerated until he became current on his support obligations. The Eleventh Circuit concluded that the state court contempt action was brought in violation of the automatic stay. Specifically, the court in *Carver* explained:

[A]lthough the Bankruptcy Code does provide an exception from the automatic stay for the collection of alimony, maintenance, or support, that exception is very narrow— *i.e.*, collection efforts may only be made against property that is not property of the estate. Generally that will include property and earnings acquired by the debtor after filing for bankruptcy protection. However, when a debtor files under Chapter 13, the bankruptcy estate includes property and wages gained after commencement of bankruptcy proceedings. Under this statutory scheme, the exception in 11 U.S.C. § 362(b)(2) has little or no practical effect in Chapter 13 situations.

954 F.2d at 1577; *see also Lawson v. Lackey (In re Lackey)*, 148 B.R. 626, 629 (Bankr. N.D.Ala.1992). Therefore, attempts by a former spouse to collect back support payments

10. Its application is more prevalent in chapter 7 cases where postpetition income of the debtor does not become property of the estate. Therefore, a former spouse has a greater opportunity

to collect past due support payments from a chapter 7 debtor than from someone in chapter 13.

from a chapter 13 debtor may not escape the scope of the automatic stay, despite § 362(b)(2).

■ The Court notes that alimony, maintenance, or support obligations are non-dischargeable in bankruptcy, even in the chapter 13 context. 11 U.S.C. §§ 523(a)(5), 1328(a)(2). Nevertheless, the automatic stay applies to all claims, even those that may be excepted from discharge. *In re Becker,* 136 B.R. 113, 116 n. 1 (Bankr.D.N.J.1992); *In re Miller,* 98 B.R. 110, 113 (Bankr.N.D.Ga.1989) (Murphy, B.J.). This does not mean, however, that a debtor's former spouse is without any remedy. The Bankruptcy Code allows such a party to seek relief by making a motion to terminate, annul, modify, or condition the automatic stay. 11 U.S.C. § 362(d). In the context of alimony, maintenance, or support, such relief should be liberally granted. *Carver,* 954 F.2d at 1578; *see also Robbins v. Robbins (In re Robbins),* 964 F.2d 342, 345–46 (4th Cir.1992); *White v. White (In re White),* 851 F.2d 170, 173–74 (6th Cir.1988); *In ·re Mann,* 88 B.R. 427, 430 (Bankr.S.D.Fla.1988) (finding no legitimate reason to deny stay relief in chapter 13 case to enforce debt that is excepted from discharge); *McCray v. McCray (In re McCray),* 62 B.R. 11, 12 (Bankr.D.Colo.1986). Nevertheless, the fact that relief from the stay may be readily granted does not relieve the creditor spouse of the duty to make such a request pursuant to § 362(d). She may not take any collection efforts against estate property until the debt has been determined to be nondischargeable and relief from stay granted. *Miller v. Hulvey (In re Hulvey),* 102 B.R. 703, 704–05 (Bankr.C.D.Ill.1988).

■ The emphasis on following the proper procedure before attempting to collect alimony, maintenance, or support arrearage is not simply a formality. The consequences can be quite severe on the former spouse if she is found to have violated the automatic stay. Provided the conduct in question does not come within the narrow exception of § 362(b)(2), such actions taken in violation of the stay are void and without effect. *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 675 (11th Cir. 1984); *Borg–Warner Acceptance Corp. v.*

*Hall,* 685 F.2d 1306, 1308 (11th Cir.1982); *In re Ungar,* 104 B.R. 517, 520 (Bankr.N.D.Ga. 1989) (Drake, B.J.). Moreover, the party guilty of violating the automatic stay may be subject to paying both compensatory and punitive damages to the injured debtor. Therefore, when faced with the possibility of violating the automatic stay, it is in the best interest of the creditor spouse first to come before the bankruptcy court requesting relief from the stay. *Accord In re Daugherty,* 117 B.R. 515, 517 (Bankr.D.Neb.1990); *In re Weidenhammer,* 82 B.R. 383, 384 n. 1 (Bankr.E.D.Pa.1988).

## B. Domestic Relations and Bankruptcy

Before addressing the merits of these proceedings, the Court takes note of the general disdain among federal courts of getting entangled in domestic relations. Within the context of bankruptcy, the Eleventh Circuit in *Carver* has directed bankruptcy courts to tread very carefully in issues involving domestic relations. As noted above, *Carver* found a violation of the automatic stay where the debtor's former spouse brought a state court action against the debtor after the debtor filed his petition. Nevertheless, *Carver* relied on the domestic relations exception to federal jurisdiction to hold that the bankruptcy court should have abstained from imposing sanctions for that violation. 954 F.2d at 1580.

Based upon *Carver,* the Defendants have urged this Court to abstain from making a ruling in these proceedings. *Carver,* however, is not so broad so as to prevent bankruptcy courts from addressing the issue of damages in domestic relations matters. In fact, the court stated

> [w]here the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation, and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim.

954 F.2d at 1580. Therefore, the door remains open for this Court to address the issues raised in these proceedings. Nevertheless, the Court is restricted to matters concerning the automatic stay and will re-

frain from delving too deeply into state domestic relations law.

Shortly after the Eleventh Circuit reached its decision in *Carver*, the Supreme Court issued its opinion in the case of *Ankenbrandt v. Richards,* —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), which the Debtor claims overrules *Carver*'s directive to tread lightly in the area of domestic relations. In that case, the Supreme Court held that the domestic relations exception did not require abstention from exercising diversity jurisdiction over a tort action for damages. The lower courts in *Ankenbrandt* had abstained since the facts of the case involved a domestic dispute. In reaching its decision, the Supreme Court found that the lower courts had given the domestic relations abstention too broad an application. Specifically, the Court concluded that this exception to federal jurisdiction applies only to divest federal courts of the power to grant and modify divorce, alimony, and child support decrees. *Id.* at —— – ——, 112 S.Ct. at 2213–15.

In *Carver*, the Eleventh Circuit relied heavily upon the domestic relations exception to rule that the lower courts should have abstained. In fact, it appears that *Carver* gave this abstention policy a much broader interpretation than did *Ankenbrandt*. For this reason, the Debtor argues that *Carver*'s policy to tread lightly when domestic relations are involved has been overruled by *Ankenbrandt*. *See Lackey,* 148 B.R. at 630 (opining that *Ankenbrandt* overruled *Carver*); *but see Higgins v. Closeout Distribs., Inc. (In re Higgins),* 159 B.R. 212 (S.D.Ohio 1993) (lower courts should act cautiously before ruling that circuit court precedent no longer is good law). This Court does not agree. While the use of the domestic relations exception has been limited by the Supreme Court, *Carver*'s decision does not rest solely upon this abstention doctrine. The Bankruptcy Code itself severely limits the authority of bankruptcy courts with respect to domestic relations. For example, its provisions except alimony, maintenance, or support obligations from discharge. *See* 11 U.S.C. §§ 523(a)(5), 1328(a)(2). In addition, as discussed above, one of the exceptions to the automatic stay involves actions to collect alimony, maintenance, or support. *See* 11

U.S.C. § 362(b)(2). By these provisions of the Bankruptcy Code, Congress has recognized the importance of domestic relations obligations, implicitly mandating that bankruptcy courts proceed with caution in these matters. *Carver* is consistent with this Congressional policy and distinguishable from *Ankenbrandt* since *Ankenbrandt* does not involve bankruptcy. Therefore, this Court declines to find that *Carver* has been overruled.

■ Moreover, the Debtor appears to have a misunderstanding of the role of bankruptcy courts in matters of domestic relations. In his briefs, he argues that this Court should review the state court's decisions pertaining to his support obligations. Specifically, he argues as follows:

> [T]he Debtor believes that it is not proper for Bankruptcy Court to assume that State Courts are infallible in regard to proper levels of support awarded and even in judgments involving contempt for child support arrearage.... [T]he Bankruptcy Court must be willing to make its own determination of the appropriateness of child support levels, [and] the wisdom of State Courts in application of State law ...

Debtor's Brief at 3 (Nov. 17, 1993). The Debtor's position that this Court should modify a state court support decree when it sees fit is completely contrary to well settled law. It long has been the position of the Supreme Court that federal courts are not capable of modifying support decrees. *See Ankenbrandt,* —— U.S. at —— – ——, 112 S.Ct. at 2213–14 (discussing history of domestic relations law and federal courts). The Eleventh Circuit has recognized that this rule of law applies in the context of bankruptcy, as well. *See Harrell v. Sharp (In re Harrell),* 754 F.2d 902, 906–07 (11th Cir.1985) (noting there is no necessity for bankruptcy court to determine the appropriate level of need or support); *see also In re Garrison,* 5 B.R. 256, 260 (Bankr.E.D.Mich.1980) (noting that Bankruptcy Code does not allow bankruptcy courts to "willy-nilly" modify state court divorce decrees).

■ It is obvious that the Debtor was dissatisfied with the treatment he received in the state trial court during his divorce, claiming it made numerous errors and treated him unfairly. *See* Debtor's Brief at 3 (Nov. 17, 1993). If so, his remedy lies by appealing through the state court system. He simply cannot come running to a federal court if he is unhappy with the results of a state court litigation.[11] *See generally Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Federal courts do not act as appellate courts of the state courts. *Mann*, 88 B.R. at 429. The lone exception is the Supreme Court of the United States, and its role is limited to hearing only matters concerning federal law.

Finally, the Court notes that the Debtor has abused the bankruptcy system. He has admitted that he filed his petition for the sole reason of bringing his "excessive" child support payments to an affordable level. *See* Debtor's Brief at 3 (Nov. 17, 1993). The bankruptcy courts are not to be used as a weapon in an on-going domestic relations dispute. *See Carver*, 954 F.2d at 1580; *see generally Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904) (noting that bankruptcy law is not to be used as instrument to deprive dependents of their right to support and maintenance). When a debtor does seek shelter in bankruptcy to avoid his domestic relations obligations, he has filed his petition in bad faith. *See In re Warner*, 115 B.R. 233, 236 (Bankr.C.D.Cal.1989) (lack of good faith prevented confirmation of plan); *In re Scarborough*, 50 B.R. 1, 1 (Bankr. S.D.Miss.1985). The troubles the Debtor has experienced have been brought on by himself. He has disregarded the authority of the state courts on repeated occasions by failing to pay his child support obligations. In fact, the state court has found him to be in contempt on three separate occasions over a period of less than two years. Ironically, it is the Debtor now who is complaining that the Defendants are disregarding the authority of the bankruptcy court.

The Debtor has attempted to entangle the bankruptcy courts with his state law domestic relations dispute. This Court wishes to make it clear that it will not serve as a haven for debtors who wish to escape their alimony, maintenance or support obligations. Such conduct by a debtor is contrary to the purposes underlying the Bankruptcy Code and is repugnant to the interests of justice. Had a party filed a timely motion early on in this case, the Court likely would have dismissed the Debtor's petition as a bad faith filing based upon the facts currently before it.

## C. Adversary Proceedings

In turning to the facts of these adversary proceedings, the Court will keep in mind the above discussions about the automatic stay and domestic relations issues in bankruptcy. The facts of each adversary proceeding will be considered individually below.

### 1. *Case No. 93–1012N*

■ In his first adversary proceeding, the Debtor alleges the Defendants violated the automatic stay with their state court contempt proceeding. At first glance, the decision in *Carver* would appear to be controlling in this case in view of the many factual similarities. As previously discussed, *Carver* found a violation of the automatic stay when the debtor's former spouse commenced a state court contempt proceeding against the debtor to collect alimony, maintenance, or support. A closer look at these two cases, however, reveals that there is an important factual distinction. Specifically, the defendants in *Carver* brought their contempt action against the debtor *after* the debtor filed his chapter 13 petition. On the contrary, the Defendants in this proceeding commenced the state court action in the Superior Court of Spalding County, Georgia, on August 17, 1992, over five months before the Debtor filed his bankruptcy case. Moreover, a judgment was reached, finding the Debtor to be in contempt, on January 19, 1993, sixteen days before the bankruptcy case was commenced. Therefore, the fact the Defen-

---

**11.** The Debtor has stated that his time for appeal of the state court had expired by the time he filed his petition. This fact, however, is immaterial. A party cannot gain access to the federal courts simply by failing to make a timely appeal in the state court. Once the time for appeal expired, the Debtor was bound by the state court decision.

dants brought and pursued their state court contempt action to judgment does not demonstrate they violated the automatic stay since all these events occurred prior to the Debtor's bankruptcy petition.

■ The Debtor alleges a violation of the stay occurred on February 4, 1993, the date he was incarcerated just a few hours after filing his chapter 13 bankruptcy petition. Specifically, he argues as follows:

> Defendants first violated the automatic stay by not acting to prevent the Debtor's arrest once Defendants were notified of the bankruptcy filing. Defendants were obligated to take all reasonable actions to prevent Debtor's arrest and—once he was arrested—to press State Superior Court for Debtor's release.

*See* Debtor's Brief at 5 (Nov. 17, 1993). This Court does not agree with the Debtor's arguments. The Defendants' involvement in the state court action was at an end once Judge Whalen entered his order on January 19, 1993. The incarceration that occurred on the date the Debtor filed his petition was an act of the state court trying to enforce its judgment, and it was not an act of the Defendants. As such, the Defendants did not violate the stay when the Debtor was placed in jail.

■ In support of his position, the Debtor cites the case of *In re Dembek,* 64 B.R. 745 (Bankr.N.D.Ohio 1986). In that case, the court noted that "a refusal or failure to take action is an act" within the meaning of § 362(a). *Id.* at 750. While this fact may be true, it applies only in cases where there is a duty to act in the first place. Here, the Debtor has failed to show that there was a duty on the Defendants to prevent the state court from carrying out its own order. Moreover, the Court notes that evidence was presented at trial indicating that Defendant Connell contacted Judge Whalen, informing him of the bankruptcy petition and the auto-

matic stay.[12] Therefore, even if there were a duty upon the Defendants, they did take steps to try to prevent the Debtor's incarceration. Finally, the Court notes that it was the Debtor who carries the blame for his own incarceration, since it was caused by his repeated failures to comply with the state court orders requiring him to satisfy his marital and domestic obligations.

■ The proper course of action for the Debtor to have taken in this situation was to file a motion with the state court, notifying it of his bankruptcy petition and the application of the automatic stay. It is settled law that bankruptcy courts do not have exclusive jurisdiction in determining the applicability of the automatic stay. As one court has stated:

> The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.

*Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp. Litigation),* 765 F.2d 343, 347 (2d Cir.1985); *see also NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 939 (6th Cir.1986); *NLRB v. Sawulski,* 158 B.R. 971, 975 (E.D.Mich.1993); *Sea Span Pub., Inc. v. Greneker (In re Sea Span Pub., Inc.),* 126 B.R. 622, 624 (Bankr. M.D.Fla.1991); *In re Bona,* 124 B.R. 11, 15 (S.D.N.Y.1991). Since the state court heard the underlying civil action, entered a judgment, and had custody of the Debtor, it likely was the best forum in which to decide the applicability of the automatic stay.[13] If the Debtor had been dissatisfied with the state court's decision of that issue, he had the option of appealing through the state court system.

Accordingly, the Court finds that the Defendants did not violate the automatic stay by allowing the Debtor to be incarcerated.

---

**12.** *See* Tr. at 28–33 (Nov. 18, 1993); Defendants' Exhibit 1 (letter from Judge Whalen acknowledging being contacted regarding Debtor's petition).

**13.** In fact, this issue may have been presented to the state court. Evidence from these adversaries and the Debtor's adversary against Judge Whalen

indicates that the Debtor contacted Judge Whalen to inform him of his bankruptcy petition and the automatic stay. Whether or not Judge Whalen addressed the issue of the scope of the automatic stay, however, is not relevant to the proceedings currently before the Court.

The conduct in question were not acts of the Defendants, but were acts of the state court attempting to enforce its own judgment entered prior to the Debtor's bankruptcy petition.[14] Moreover, the Defendants were under no obligation to prevent the Debtor's incarceration or press the state court for his release once arrested. In view of this conclusion, the Court need not address the issues of damages and abstention.

### 2. Case No. 93–1044N

■ The Debtor's second adversary complaint is against Defendant Overstreet. In this proceeding, the Debtor alleges Overstreet violated the automatic stay when she received funds from the Superior Court of Spalding County, Georgia, which had been paid to obtain the Debtor's release from jail. The Debtor requests that these funds be returned to the estate and that Overstreet be ordered to pay a punitive award to force her future compliance with orders of this Court.

As previously noted in this Order, the Debtor's mother, Barbara S. Rogers, obtained the Debtor's release from jail on February 19, 1993, when she paid the sum of $7,524.00 to the Superior Court of Spalding County, Georgia. Overstreet, however, did not collect these funds until February 26, 1993, after this Court held an in chambers conference with the attorneys of the parties involved. At that conference, the parties agreed that the funds paid by the Debtor's mother were not property of the estate, and Overstreet could proceed to collect them. The reason for this conclusion was that this money was the property of Barbara S. Rogers, and not the Debtor's property. These funds did not come from the Debtor's regular income or his savings. The money from the Debtor's mother merely was a postpetition loan at best and did not become property of the Debtor's estate. *See Carver*, 954 F.2d at 1580 (funds borrowed by the debtor postpetition to obtain his release from jail did not become property of the estate). As discussed earlier in this Order, the automatic stay does not apply to collecting alimony, maintenance, or support from property that is not property of the Debtor's estate. 11 U.S.C. § 362(b)(2). Accordingly, Overstreet did not violate the automatic stay to the extent she collected alimony, maintenance, or support from the Superior Court.

■ Of the $7,524.00 Overstreet received on February 26, 1993, $4,625.00 represents child support payments. There is no dispute this amount qualifies as alimony, maintenance, or support, so Overstreet was allowed to receive this money from nonstate property. The Debtor argues, however, that the funds for attorney's fees are not support payments. For a state court in Georgia to award attorney's fees in a divorce proceeding, it "shall consider the financial circumstances of both parties as a part of its determination to the amount of attorney's fees." O.C.G.A. § 19–6–2(a)(1). As such, the Superior Court of Spalding County necessarily must have evaluated the financial position of both the Debtor and Overstreet and determined that Overstreet was in need of this assistance from her former spouse. Therefore, the Court finds that the Debtor's obligation to pay attorney's fees qualifies as alimony, maintenance, or support. *Accord Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir.1983); *Townsend v. Townsend (In re Townsend)*, 155 B.R. 235, 238 (Bankr.S.D.Ala.1992); *Myers v. Myers (In re Myers)*, 61 B.R. 891, 895 (Bankr. N.D.Ga.1986) (Kahn, C.J.). Overstreet was

---

**14.** Whether or not the state court violated the automatic stay by incarcerating the Debtor for his contempt is another matter. Several cases have discussed this issue and have been reluctant to find that the automatic stay applies to actions of a nonbankruptcy court to enforce its contempt orders. *See, e.g., Sawulski*, 158 B.R. at 976–77 (automatic stay does not apply to proceeding to enforce compliance with a court's orders); *O'Brien v. Nachtigal (In re O'Brien)*, 153 B.R. 305 (D.Or.1993) (contempt proceeding for prepetition disobeyance of state court order not subject to automatic stay); *Stovall v. Stovall*, 126 B.R. 814 (N.D.Ga.1990) (contempt proceeding not stayed so long as it pertains to upholding prebankruptcy dignity of court); *US Sprint Comm. Co. v. Buscher*, 89 B.R. 154 (D.Kan.1988) (it is within court's inherent powers to take whatever steps necessary to ensure compliance with its orders, and Congress did not intend to strip this power through the automatic stay). It is not necessary, however, for the Court to address this issue. Only the actions of the Defendants are in question in these proceedings, and not the actions of the state court.

not stayed from collecting these fees from nonestate property.

■ The Court is concerned, however, about the $1,934.00 which represents a debt to Sears. It is not clear whether the Debtor's obligation to pay this debt is in the nature of alimony, maintenance, or support. If this obligation merely was a property settlement between the Debtor and Overstreet, the exception to the automatic stay found in § 362(b)(2) may not apply. As such, the Court will reserve judgment on the Sears debt to allow the parties to address this issue. The Court will accord deference to the decision of the Superior Court of Spalding County when it issued the divorce decree as to whether this debt constituted alimony, maintenance, or support. Any issue of damages will be limited to whether this Court should order a turnover of these funds.[15]

### 3. Case No. 93–1059N

■ The Debtor brought his third adversary proceeding alleging the Defendants violated the automatic stay by filing the counterclaim against the Debtor in state court. At the outset, the Court notes the Defendant's argument that a counterclaim is not prohibited by the automatic stay since it is in response to an action filed by the Debtor. This argument must fail, however, in view of the plain language of § 362, which applies to all actions "commenced ... to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). In filing a counterclaim, a party commences an action against a debtor to recover a claim. Therefore, the Court finds that a counterclaim which seeks to recover a prepetition claim is subject to the provisions of the automatic stay. A party first must seek relief from the stay before filing such a claim.

It is the Debtor's position that the Defendants' counterclaim sought to collect prepetition debts. If so, it may be a violation of the automatic stay. The language of the counterclaim itself is ambiguous as to whether or not it seeks prepetition debt. It only states that the Debtor was in arrears of his child support obligations. At the trial before this Court, however, the Defendants testified that they made it clear to the state court judge they only were pursuing postpetition claims.[16] Indeed, the Order of the state court supports this position. Specifically, the Honorable Ben J. Miller, Judge of the Superior Court of Spalding County, Georgia, ordered as follows:

> [The Debtor] is found to be in wilful contempt for his failure to pay medical expenses and medical insurance costs in the amount of $434.68 which have accrued *after* [the Debtor] filed a petition in bankruptcy. [The Debtor] is ordered to pay the sum of $434.68 immediately and failing such payment shall be held in the common jail of Spalding County until he purges himself from contempt.
>
> The Court further finds that [the Debtor] is in arrears in child support in the amount of $360 and in court ordered payment of medical insurance premiums in the amount of $33.77. Both such amounts accrued *prior* to the filing of [the Debtor's] bankruptcy petition and Defendant [Overstreet] has advised the court that she is not seeking to have [the Debtor] held in contempt for such arrearage. The Court understands that the prebankruptcy arrearage of $393.77 ($360 + $33.77) will be paid by [the Debtor] through the bankruptcy court and *this court takes no action in regard to the enforcement of such prebankruptcy petition arrearage* other than to find and determine the amount thereof.

*Rogers v. Overstreet,* No. 93–V–861, slip op. at 2 (Super.Ct. Spalding County, Georgia, Aug. 31, 1993) (emphasis added). The Court finds that this Order of the state court estab-

---

**15.** The Court notes that the codebtor stay of 11 U.S.C. § 1301(a) prevents Sears from collecting this debt from Overstreet, assuming Overstreet was jointly liable for it. Moreover, if a turnover of these funds is required, the Court does not decide at this time whether this money would be returned to the Debtor's mother or to the estate.

**16.** *See* Tr. at 19 (Nov. 18, 1993). When asked why prepetition support obligations were included in the counterclaim, Defendant Connell stated that the "convoluted" manner in which the Debtor was making his payments made it unclear as to whether the debts involved were prepetition or postpetition. *Id.* at 18.

lishes that the Defendants were not trying to collect a prepetition debt in their counterclaim. For this reason, the Defendants' counterclaim did not violate the automatic stay.

Even if the counterclaim were an attempt to collect a prepetition debt, the Defendants' action likely would have escaped the scope of the automatic stay. As previously discussed, § 362(b)(2) states that the automatic stay does not apply to the collection of alimony, maintenance, or support from property that is not property of the estate. Once a debtor's chapter 13 plan is confirmed, case authority suggests that property of the estate includes his earnings only to the extent necessary to fund the plan. *See American General Fin., Inc. v. McKnight (In re McKnight)*, 136 B.R. 891, 894–95 (Bankr.S.D.Ga.1992) (holding that postpetition earnings not necessary for plan no longer are property of estate after confirmation); *In re Ziegler*, 136 B.R. 497, 500 (Bankr. N.D.Ill.1992); *Pacana v. Pacana (In re Pacana)*, 125 B.R. 19, 22 (Bankr. 9th Cir.1991); *McCray*, 62 B.R. at 12; *In re Adams*, 12 B.R. 540, 543 (Bankr.D.Utah 1981). In this case, the Debtor's plan requires him to make monthly payments of $420.00 per month. The Debtor's income over and above that amount is not necessary to fund his chapter 13 plan, and as such, may not be property of the estate. Therefore, the Defendants' counterclaim would not have violated the automatic stay to the extent it sought prepetition support payments from the Debtor's earnings not necessary to fund the plan.

## CONCLUSION

In conclusion, the Court finds that the Defendants had no affirmative duty to prevent the Debtor's incarceration for his contempt of the Superior Court of Spalding County, Georgia. The Debtor's incarceration was an act of the state court and not of the Defendants. Moreover, Defendant Overstreet's act of collecting $7,524.00 from the state court did not violate the automatic stay to the extent this money represented payments in the nature of alimony, maintenance, or support. These funds were paid to the state court by the Debtor's mother and were not property of the Debtor's estate. Finally, the Defendants' counterclaim against the Debtor did not violate the automatic stay since the Defendants' only sought to collect postpetition support payments. Accordingly, the relief requested by the Debtor in these adversary proceedings is DENIED. A separate and final judgment in favor of the Defendants shall be entered in the Debtor's first and third adversary proceedings. A partial judgment in favor of Defendant Overstreet shall be entered in the second proceeding.

**IT IS SO ORDERED.**