**In re Peter MONTANA a/k/a Peter Martin, Debtor.**

**Bankruptcy No. 95–10704–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Aug. 22, 1995.

Cynthia I. Chiefa, Miami, FL, for creditor.

Michael J. Brooks, N. Miami, FL, for debtor.

### ORDER ON DEBTOR'S EMERGENCY MOTION FOR REHEARING

A. JAY CRISTOL, Chief Judge.

**THIS MATTER** came before the Court on August 16, 1995 upon Debtor's Emergency Motion for Rehearing of this Court's July 14, 1995 Order Granting in Part Creditor's Motion for Stay Relief. (CP # 18) The Court, having heard arguments of counsel, reviewed the case law and memoranda submitted by counsel, and being otherwise fully advised in the premises, hereby denies Debtor's motion based on the following.

### BACKGROUND

On February 15, 1995 the Debtor, Peter Montana, (hereinafter "Debtor" or "Mr. Montana") filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Prior to Debtor filing his petition for bank-

ruptcy, Debtor and his spouse, Janice Featherstone, (hereinafter "Creditor" or "Ms. Featherstone"), have been involved in an embittered divorce proceeding since 1993 (In re the Marriage of Peter Montana and Janice Featherstone, a/k/a Janice Reta Montana, Case No. 93–06264 FC 39, Circuit Court, Dade County Florida).

In the divorce proceedings, General Master Mitchell Goldman made specific findings in his July 27, 1993 Report and Recommendation of General Master that Ms. Featherstone had demonstrated a need for temporary support, maintenance, and attorneys' fees and, that Mr. Montana had the ability to pay such temporary support and maintenance as well as temporary attorneys' fees. The State Court entered an Order ratifying the General Master's Report and that Order remains in full force and effect.

On February 3, 1995 the General Master held an evidentiary hearing on Ms. Featherstone's Emergency Motion for Contempt for Non–Payment of Support. After considering the sworn testimony of the parties and other evidence presented, the General Master made certain findings of fact, conclusions of law and recommendations to the Court. The General Master determined at the evidentiary hearing that it was undisputed that Mr. Montana had not paid certain support obligations as previously ordered by the Court. The General Master further found that Mr. Montana always had and continues to have the present ability to pay the support obligations due, owing and outstanding to his wife or payable on her behalf. The General Master recommended that the Husband should be held in contempt for his deliberate non-payment of support obligations and be sentenced to sixty (60) days in the Dade County Jail, with the right to purge himself of his contempt and jail sentence by paying specific amounts determined owed. The General Master reserved jurisdiction to increase the purge amount for other support items referenced or any others that are not paid when due. The General Master filed his Report and Recommendations to the February 3, 1995 evidentiary hearing on February 16, 1995. On April 3, 1995 the State Court

ratified the General Master's Report and Recommendations.

On July 5, 1995, Ms. Featherstone filed an Emergency Motion to Dismiss Debtor's Bankruptcy Case or, in the alternative, for Relief from the Automatic Stay. On July 14, 1995 this Court Granted Ms. Featherstone's Motion for Relief from the Automatic Stay to proceed with the State Court divorce proceedings. This Court further ordered that the State Court may proceed to carry out its orders of incarceration of the Debtor for his failure to pay Court ordered support and alimony obligations (since they are non-dischargeable debts) and may execute against any non-bankruptcy estate assets and non-exempt assets of the Debtor. The Court deferred for a later date a determination as to whether the case should be dismissed for bad faith filing.

On July 24, 1995 Debtor filed an Emergency Motion for Rehearing. Debtor argues that while "it is clear that some of the support is for alimony and is therefore non-dischargeable" in bankruptcy, the amount required to purge himself of the State Court contempt order relates to attorneys' fees and is therefore dischargeable. Debtor argues in his Memorandum of Law in Support of Motion for Re–Hearing that these amounts are the subject of an adversary proceeding to determine dischargeability. That is, that the State Court has held the Debtor in contempt for items that may or may not be dischargeable.

### APPLICABLE LAW AND DISCUSSION

In his Memoranda of Law, Debtor submits that the Court must first determine whether the Creditor has met the two-pronged test set forth by the court in In re Weidenhammer [1] to determine whether Creditor is authorized to go forward in the collection of alimony, maintenance or support. Debtor submits that before this can be done, the Bankruptcy Court must first determine what constitutes alimony, maintenance and support. This simply is not the case.

1. 82 B.R. 383 (Bankr.E.D.Pa.1988).

The Court is aware that the automatic stay applies to all claims, even those that may be excepted from discharge. However, despite the broad scope of the automatic stay, it does not serve to stay all proceedings involving the debtor. *Rogers v. Overstreet (In re Rogers)*, 164 B.R. 382 (Bankr. N.D.Ga.1994); *Heflin v. Heflin (In re Heflin)*, 145 B.R. 560, 562 (Bankr.S.D.Ohio 1992). Section 362(b) of the Bankruptcy Code expressly provides that *certain actions are not stayed by the filing of a petition.* Among the acts excepted from the automatic stay is "the collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2). As such, a spouse's action to collect prepetition support arrearage is not subject to the automatic stay, so long as property of the estate would not be used to satisfy the claim. *Rogers v. Overstreet (In re Rogers)*, 164 B.R. 382 (Bankr.N.D.Ga.1994).

It is settled law that bankruptcy courts do not have exclusive jurisdiction in determining the applicability of the automatic stay. *Id.* at 391. As one court has stated:

The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.

*Id.* at 391, citing *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp.)*, 765 F.2d 343, 347 (2d Cir.1985); *Sea Span Pub., Inc. v. Greneker (In re Sea Span Pub., Inc.)*, 126 B.R. 622, 624 (Bankr. M.D.Fla.1991).

Not only does the State Court have the jurisdiction in this matter to determine whether the proceeding before it is subject to the automatic stay or excepted on the grounds that it involves "the collection of alimony, maintenance, or support" from property that is not property of the estate, but since the State Court heard the underlying civil action and entered orders based on evidence taken, it is also the best forum in which to decide the applicability of the automatic stay. *Sea Span Pub., Inc. v. Greneker*

*(In re Sea Span Pub., Inc.)*, 126 B.R. 622, 624 (Bankr.M.D.Fla.1991).

Debtor's real beef appears to be that the State Court has held him in contempt and incarcerated him for failure to obey its court orders. Debtor's determination of contempt and incarceration were not violations of the automatic stay, but acts of the State Court attempting to enforce its own orders. Contempt proceedings arising out of a debtor's disobedience of a state court order are not stayed by debtor's bankruptcy filing when the state court order disobeyed was made prior to filing of the bankruptcy petition. *O'Brien v. Nachtigal (In re O'Brien)*, 153 B.R. 305 (Bankr.D.Oregon 1993). Here, the orders which were disobeyed, the July 27, 1993 General Master's Recommendation and Report and Order ratifying same, were entered pre-petition.

In *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D.Kan.1988), the court held that the automatic stay did not prevent the sentencing of a debtor on a civil contempt order after the debtor had violated a preliminary injunction entered by the court. After the court's finding of contempt, but before sentencing, defendant filed his bankruptcy petition. Relying on the decisions in *In re Marini*, 28 B.R. 262 (Bankr.E.D.N.Y.1983) and *In re Gedeon*, 31 B.R. 942 (Bankr. D.Colo.1983), the *Buscher* court reasoned that the civil contempt proceeding was not automatically stayed by the bankruptcy filing.[2] In reaching this decision, the Buscher Court weighed heavily the fact that defendant had directly violated two orders of the court, and stated as follows:

At first glance, § 362(a)(1) does seem to stay this court's sentencing power because it halts any judicial proceeding. But this is not just any judicial proceeding. This court has already determined that defendant violated two direct orders of this court. It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the

---

2. Likewise, in *Martin–Trigona v. Gouletas*, 15 B.R. 645 (N.D.Ill.1980), the court held that the bankruptcy filing did not automatically stay a criminal contempt proceeding.

court of this power and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court. A civil contempt judgment is one effective method of coercing compliance and of "upholding the dignity of the court."

In *U.S. Sprint Communications Co. v. Buscher,* 89 B.R. 154, 156 (D.Kan.1988).

Similarly, this is not just any judicial proceeding, but one involving matters expressly excepted from the automatic stay—the collection of alimony, maintenance or support from property that is not property of the estate. Like the debtor in *Buscher,* this Debtor has violated orders entered pre-petition and this Court does not believe that the automatic stay strips the State Court of its ability to compel compliance with its orders.

Based on the foregoing, the Court determines that the bankruptcy filing does not stay the State Court's right to carry out its orders of incarceration of the Debtor for his failure to pay court ordered support and alimony obligations. As to Debtor's argument that the State Court has held Debtor in contempt for items that are not alimony, maintenance, or support (i.e., attorneys' fees), the Court determines that the State Court is in the best position to interpret its own orders and determine whether items within its orders were in the nature of alimony, maintenance, or support.[3] *Sea Span Pub., Inc. v. Greneker (In re Sea Span Pub., Inc.),* 126 B.R. 622, 624 (Bankr.M.D.Fla. 1991). Accordingly, it is

**ORDERED:** that Debtor's Motion for Rehearing is granted and upon reconsideration is DENIED.

**DONE and ORDERED.**

---

**3.** See, also, *Rogers v. Overstreet (In re Rogers),* 164 B.R. 382 (Bankr.N.D.Ga.1994). There, the bankruptcy court determined that chapter 13 debtor's obligation to pay former spouse's attorney fees was non-dischargeable alimony, maintenance, or support, and thus the automatic stay exception for actions to recover support from non-estate property applied to spouse's recovery of attorney fees, where state court was required by statute to consider financial position of debtor and spouse in awarding fees and must have determined that spouse was in need of assistance.