**In re Hyo Jin MOON, Debtor.**

**Bankruptcy No. 96 B 21929.**

United States Bankruptcy Court,
S.D. New York.

Oct. 4, 1996.

Cora J. Glasser, New York City, for Debtor.

Choate, Hall & Stewart by Douglas R. Gooding, Boston, MA, for Nansook Hong Moon and Choate, Hall & Stewart.

## DECISION ON CROSS–MOTIONS UNDER 11 U.S.C. § 362

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Hyo Jin Moon (the "debtor") has moved by order to show cause for an order pursuant to 11 U.S.C. §§ 105 and 362(a) enforcing the automatic stay. The named respondents are the debtor's estranged wife Nansook Hong Moon ("Ms. Moon") and her attorneys Choate, Hall & Stewart. Specifically, the debtor seeks relief from orders (the "contempt order") of the Massachusetts Probate and Family Court, Middlesex Division (the "Probate Court") holding the debtor in contempt of a prior order of that Court and incarcerating him since July 17, 1996 for failure to pay to Ms. Moon $65,000 for attorneys' fees and $8,500 for support for the month of September.[1] Ms. Moon argues that the contempt order is not subject to the automatic stay under section 362(a), and also that it is excepted from the automatic stay under section 362(b)(2)(B). Alternatively, Ms. Moon argues that this Court should abstain in this matter under 28 U.S.C. § 1334(c)(1), and she has moved to lift the stay under 11 U.S.C. § 362(d)(1).

### Background

The debtor and Ms. Moon were married in 1982. They have five children ranging in age from 13 to 2.

The debtor is the oldest son of Rev. Sun Myung Moon, the leader of the Unification Church (collectively with other entities that have provided money or support to the debtor in the past, the "Church"). Until August 1995 the debtor and his family lived in Irvington, New York, on a large and luxurious estate or conference center owned and maintained by the Church. The debtor and his family enjoyed a lifestyle characterized by the Probate Court as "an opulent lifestyle in New York consistent with the lives of the rich and famous", funded largely or entirely by Rev. Moon, a family trust in Switzerland or the Church. Evidence presented to the Probate Court described the debtor's extravagant lifestyle and the apparently ready availability to the debtor of very large sums of money in cash.

In August 1995 Ms. Moon left the Irvington estate with her five children and fled to Massachusetts, allegedly in fear for her and their physical safety and psychological well-being. Alleging that the debtor was addicted to drugs and alcohol and had abused and threatened her, Ms. Moon sought and obtained from the Probate Court a personal restraining order against the debtor in August 1995. At the same time Ms. Moon filed with the Probate Court a Complaint for Separate Support. After the expiration of a stipulation which provided Ms. Moon with temporary support, the parties appeared before the Probate Court on February 28, 1996 on Ms. Moon's Motion for Temporary Orders and Motion for Counsel Fees Pendente Lite. On that date the debtor submitted a financial statement, signed under the penalties of perjury, certifying gross weekly income of $2,279, assets of approximately $7,000 (motorcycle and ATV Quad Runner) and $186.75 in three bank accounts, and liabilities in the amount of approximately $57,400 and undisclosed legal fees. At the conclusion of the February 28 hearing, the Probate Court entered a Temporary Order providing, *inter alia*, monthly support of $8,500 and $65,000 as counsel fees payable to Ms. Moon.

The debtor paid the $8,500 monthly support from March 1 through August 1, but did not pay the $65,000 awarded as counsel fees. On April 25 Ms. Moon filed a Complaint for Contempt, and on July 17 the parties appeared before the Probate Court on that application. The debtor submitted a second financial statement, signed under the penalties of perjury and dated 7–17–96, certifying weekly income of $2,818, assets of $9,980 (one bank account) and liabilities of $280,900 owing to "Holy Spirit Assoc." and "ongoing"

---

1. At a hearing before this Court on September 26 it was reported by counsel that arrangements had been made for payment on the debtor's behalf of the required support payments for the months of September and October.

owing to Rev. Moon for legal fees. Upon the conclusion of the July 17 hearing, the Probate Court entered a Judgment on Complaint for Contempt finding the debtor in contempt of the Court's February 28 order and ordering that "the defendant be committed to jail for 30 days until he shall purge himself of said contempt by payment of $65,-000.00", and the debtor was remanded to jail. The debtor immediately sought a stay of his incarceration by petitioning a justice of the Massachusetts Appeals Court. The petition was denied.

On August 13 Ms. Moon filed a Complaint for Divorce.

On August 14, 1996 the parties again appeared before the Probate Court for a status review of the contempt. At the August 14 hearing the debtor represented to the Probate Court that he had no assets, no income and only liabilities, having been terminated from his employment and removed as a beneficiary of the family trust. Documents evidencing the termination of the debtor's employment and his removal as a trust beneficiary were filed with the Court. The debtor also filed a third financial statement, signed under the penalties of perjury, certifying that he had no income, no assets, and liabilities of $280,900 to Holy Spirit Association on account of "Room/Board", $50,-000 to Manhattan Center on account of "Loan" and "ongoing" to Rev. Moon for "personal" and "Legal Fees". The Probate Court issued a "MEMORANDUM AND ORDER ON COMPLAINT FOR CONTEMPT" dated August 14, 1996. Expressing concern that "if the [debtor] is released at this time, he will place himself beyond the jurisdiction of this court",[2] the Probate Court ordered that defendant be recommitted to the Middlesex County jail "for an *additional period of sixty (60) days or until* he makes payment [of the $65,000] as ordered", and set a status review for September 13. A second petition for a stay pending appeal was denied by the Massachusetts Appeals Court on August 21.

On September 12, 1996, the debtor filed a voluntary petition under Chapter 7 in this Court certifying, under penalty of perjury, that he has assets totalling $2,000, secured debt of $200,000 (mortgage lien on a cooperative apartment and lease) and unsecured debts of $385,000 including the $65,000 counsel fees payable to Ms. Moon, $150,000 payable to Rev. Moon, $60,000 payable to Holy Spirit Church Association, a total of $50,000 payable to two law firms for legal fees and $60,000 payable to Manhattan Center Studio for employer advances.

On September 13, 1996 the parties appeared before the Probate Court. At the hearing counsel for the debtor argued that continuation of the incarceration violated the automatic stay. The Probate Court did not rule upon the applicability of the automatic stay, but declined to release the debtor. Since the debtor had failed to make the $8,500 support payment due on September 1, the Probate Court entered a further order dated September 13, 1996 providing that "the defendant be committed to jail for thirty (30) days until he shall purge himself of said contempt by payment of $73,500.00", and the Court set the next hearing on the debtor's contempt for October 9.

The debtor's counsel brought the instant motion to this Court with a proposed order to show cause on the afternoon of September 20, at which time a preliminary conference was held, Ms. Moon's counsel participating by telephone. Counsel for the Chapter 7 trustee participated by telephone in the September 20 preliminary conference and stated that the trustee would take no position on the debtor's motion. Ms. Moon's counsel served opposing papers on September 25 and the Court held a lengthy hearing on the afternoon of September 26. The debtor's counsel was granted until September 30 to file papers opposing Ms. Moon's protective motion for relief from stay, and Ms. Moon until October 1 to reply. Further papers were filed by the parties on October 3.

---

**2.** In fact, it does not appear that the debtor's incarceration was or is intended to keep him physically within the jurisdiction of the Probate Court. The sole purpose of the contempt order, as evidenced by its terms, is to compel payment since the debtor must be released upon payment.

## Preliminary Statement

Before turning to the parties' legal arguments, it is important to make clear what is and is not before this Court, inasmuch as this will clarify this Court's disposition of the cross-motions.

This Court is concerned solely with matters arising under the United States Bankruptcy Code, specifically 11 U.S.C. § 362. The only parties before this Court over whom this Court has jurisdiction are the debtor and Ms. Moon.[3]

■ This Court presently has no jurisdiction with respect to the Probate Court or any order issued by the Probate Court. The contempt order (now on appeal before the Massachusetts Appeals Court) is not subject to review by this Court and is presumed by this Court to be valid and enforceable under Massachusetts law unless and until reversed, vacated or modified by a Massachusetts court.

■ Federal courts recognize the special expertise of state courts in domestic relations matters and should avoid deciding family law matters wherever possible. *See In re Newman,* 196 B.R. 700, 702–703 (Bankr.S.D.N.Y. 1996) (Gallet, U.S.B.J.) and cases cited therein. As noted by the Court of Appeals in *Carver v. Carver,* 954 F.2d 1573, 1578 (11th Cir.1992), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992), "the federal courts have been wary of becoming embroiled in family law matters", and for that reason generally abstain in diversity cases from deciding divorce, alimony, child custody, visitation rights and similar domestic relations issues. Consistent with these precepts, no issue of family law has been presented in this contested matter, and no such issue will be decided by this Court.

Finally, nothing in this decision is to be construed as a finding of fact, conclusion of law or expression of opinion as to any rights, liabilities, claims or defenses as between any of the parties referred to herein (*e.g.,* whether the debtor, or the Chapter 7 trustee on behalf of the debtor's estate, may have any rights against Rev. Moon, the Church or the family trust; whether the debts listed in the debtor's schedules are valid and enforceable, susceptible of subordination, etc.; whether Ms. Moon may have direct claims against Rev. Moon, the Church or the family trust; whether the debtor's obligation to pay $65,000 under the Probate Court's February 28, 1996 order is in the nature of support and therefore non-dischargeable under section 523(a)(5)), although a number of such issues have been raised directly or obliquely by the parties in their written and oral submissions. Nor has counsel waived for Ms. Moon, much less for the Chapter 7 trustee, the right to assert that the debtor has some enforceable power to compel Rev. Moon, the Church or the family trust to pay his debts to his wife; counsel has simply acknowledged that no basis for such an argument is known at this time.

## Discussion

### Effect of the automatic stay on the contempt proceeding

■ The matter before the Court is framed by the debtor's order to show cause as follows:

> [W]hy an order should not be made enforcing the automatic stay with respect to the pre-petition claims [to wit, the claim for $65,000 attorneys' fees based on the Probate Court's February 28, 1996 order] of the respondents, and why the automatic stay should not be enforced with respect to the civil contempt order under which the Debtor is incarcerated.

Ms. Moon argues that continued enforcement of the contempt order does not violate the automatic stay provided in section 362(a). The debtor argues the contrary. Lacking any contrary controlling precedent in the Second Circuit, the issue thus framed is resolved by the statute itself. Section 362(a) states, in pertinent part:

§ 362. **Automatic stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... oper-

---

**3.** Although named as a creditor and a respondent, Choate, Hall & Stewart disclaims creditor status and appears solely as counsel for Ms. Moon.

ates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial ... action or proceeding against the debtor that was ... commenced before the commencement of the case ... to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor ..., of a judgment obtained before the commencement of the case under this title;
>
> \* \* \* \* \* \*
>
> .(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

The stay is "applicable to all entities", including Ms. Moon. It is clear beyond argument that the continuation of Ms. Moon's contempt proceeding against the debtor and the debtor's continued incarceration in pursuance of that proceeding constitute the "continuation [of] employment of process, of a judicial ... action or proceeding against the debtor that was ... commenced before the commencement of the case ... to recover a claim against the debtor that arose before the commencement of the case" under subsection (1); "the enforcement, against the debtor ... of a judgment obtained before the commencement of the case" under subsection (2); and an "act to collect ... or recover a claim against the debtor that arose before the commencement of the case" under subsection (6). Thus, on the face of the statute, the post-petition continuation of the contempt proceeding brought by Ms. Moon to enforce the debtor's liability to pay $65,000 for attorneys' fees under the Probate Court's February 28, 1996 order, including the debtor's incarceration for contempt for failing to comply with the February 28 order, constitutes a violation of the automatic stay under section 362(a)(1), (2) and (6).

Ms. Moon argues that "[s]everal courts presented with the very issue before this Court have held that enforcement against a debtor of a state court contempt order arising from the debtor's violation of a prepetition order of that state court does not violate the automatic stay." It is argued that contempt orders "to uphold the dignity of the court" are not stayed by section 362(a).

Before turning to the case law, it will be useful to address Ms. Moon's contention that the contempt order in this case was entered in order to "uphold the dignity of the court", and that such orders whether pre- or post-petition are not subject to the automatic stay. In support of the "dignity of the court" characterization, Ms. Moon points to several expressions by the Probate Court at the September 13 status conference (viz.: "you can't defy a court like that"; "you can't just disobey orders. I just can't sit here and let orders go"). If such remarks were to be the touchstone for decision, one would also want to have reference to the comments by the Probate Judge to the effect that he was loathe to incarcerate the debtor and would not do so if the debtor would simply pay or arrange for the payment of the $65,000. But important legal issues are not to be decided on the basis of sound bytes or subjective expressions of the court in colloquy with counsel. Nor is it illuminating to invoke catch-phrases like "dignity of the court", since it may accurately be said that any contempt order seeks to uphold or vindicate the court's authority and dignity.

■ The test in this case is objective, and it is two-fold: (i) what does the court's order provide by its terms; and (ii) does the order by its terms fall within the express provisions of the statute. The several iterations of the contempt order issued by the Probate Court all provide that the debtor "be committed to jail for [ ] days until he shall purge himself of said contempt by payment of $65,000.00 [$73,500.00]". As thus written, the contempt order is without question within the scope of subsections (1), (2) and (6) of section 362(a). Although incarceration obviously is inherently punitive, the contempt order is in fact coercive in nature because, by its terms, it permits the debtor to avoid the punishment by paying his pre-petition debt. As such, it is encompassed by the clear language of section 362(a) of the Bankruptcy Code. By

contrast, a contempt order, whether denominated as civil or criminal, which incarcerates a party for some period of time for some contumacy without leave or compulsion to purge the contempt by doing something (such as paying a pre-petition debt) implicating any of the subdivisions of section 362(a) is purely punitive and does not fall within the scope of the statute. Both types of order can be said to "uphold the dignity of the Court", but the latter does not fall within the scope of section 362(a), while the former does.

The case law cited by the parties is generally consistent with the foregoing in result, if not analysis. *See, In re Newman,* 196 B.R. at 704 ("actions for civil contempt are considered private collection devices and are within the ambit of the automatic stay"). Perhaps the clearest exposition is set forth in *In re Rook,* 102 B.R. 490 (Bankr.E.D.Va.1989), *aff'd,* 929 F.2d 694 (4th Cir.1991), which involved a 1983 contempt order (like the contempt order in this case) which was coercive or remedial in nature, and a 1989 order which was purely punitive and could not be purged by payment or other act of compliance. The bankruptcy court found the former order to be subject to the stay under section 362(a), while the latter was not, observing that "the contempt provision of the 1983 order must be construed as an attempt to exact certain behavior from the debtor, specifically the payment of sums due his former spouse, to which the stay would have applied to prevent the coerced dilution of the estate." 102 B.R. at 494. *See* the court's useful review of the case law at 102 B.R. at 493–494. In *In re Kearns,* 168 B.R. 423, 426 (D.Kan.1994) the district court recognized that "[t]o the extent plaintiff claims that the contempt proceedings were intended to coerce payment of past support obligations from property of the estate, such actions would violate the automatic stay". *In re Dunham,* 175 B.R. 615 (Bankr.E.D.Va.1994) involved a contempt order which was coercive rather than punitive. But the acts which the order sought to compel (turning over documents and testifying truthfully) were not within the scope of any of the subsections of section 362(a), and the court rightly held that the filing of a bankruptcy petition did not stay the contempt order.

Similarly, *In re Dumas,* 19 B.R. 676 (9th Cir. BAP 1982) involved contempt of an order requiring compliance with a discovery subpoena, and thus the debtor's contumacious conduct was not within the scope of any subsection of section 362(a). In *Stovall v. Stovall,* 126 B.R. 814, 816 (N.D.Ga.1990) the district court ruled, consistent in result with this Court's analysis above, that "[the debtor's] motion for a restraining order is granted only insofar as the citation of contempt pending in the Superior Court of Paulding County seeks to collect the $16,500.00 debt which has been discharged by the Bankruptcy Court. The pending citation for contempt is not stayed insofar as it relates to the failure of the [debtor] to obey the Superior Court's order in the months prior to bankruptcy, nor as it may seek to have the previous divorce decree modified due to changed circumstances, nor as it relates to any actions arising from the earlier divorce which are unrelated to the discharged $16,500.00 debt." *International Distribution Centers Inc. v. Walsh Trucking Co., Inc.,* 62 B.R. 723 (S.D.N.Y.1986) involved a debtor's defiance of a stipulation and order prohibiting transfer of assets except for adequate current consideration. Since the district court found "as a factual matter that IDC is not seeking to collect on the pre-petition judgment debt", the contempt proceeding brought by IDC did not implicate the automatic stay under section 362(a). Similarly, in *US Sprint Communications Company v. Buscher,* 89 B.R. 154 (D.Kan.1988) the district court found defendant Buscher in civil contempt for his failure to comply with two orders of the court, one being an injunction forbidding Buscher to distribute illegal US Sprint access codes and the other requiring Buscher to appear at a hearing. The district court held that Buscher's intervening bankruptcy did not stay the court's sentencing power in the contempt proceeding, because neither the orders which Buscher violated nor the proceeding to punish him for his contumacy were within the scope of the essentially collection proceedings described in and stayed by section 362(a). So also *In re Rudaw/Empirical Software Products Ltd.,* 83 B.R. 241, 247 (Bankr. S.D.N.Y.1988), where Judge Schwartzberg lifted the automatic stay solely for the pur-

pose of a contempt proceeding for the debtor's violation of a state court order enjoining the debtor from selling a competitive product, which obviously had nothing to do with any of the matters referred to in section 362(a). In *In re Campbell*, 185 B.R. 628 (Bankr.S.D.Fla.1995), the bankruptcy court concluded that proceedings on a contempt order "are not subject to the automatic stay, provided that Barnett does not seek collection of pre-petition support or maintenance from property of the estate, and provided that the purging of any contempt does not require the debtor to use property of the estate." Cases arising under prior bankruptcy law do not appear to be inconsistent with this Court's analysis. *See Guariglia v. Community National Bank & Trust Company*, 382 F.Supp. 758 (E.D.N.Y.1974), *aff'd*, 516 F.2d 896 (2d Cir.1975), *In re Spagat*, 4 F.Supp. 926 (S.D.N.Y.1933) and *In re Hall*, 170 F. 721 (S.D.N.Y.1909).

Two cases do appear to support Ms. Moon's argument that a pre-petition state court contempt proceeding does not violate the automatic stay even if the order seeks to coerce conduct within the scope of section 362(a). In *In re O'Brien*, 153 B.R. 305 (D.Or.1993), one day after the debtor filed a bankruptcy petition a state court held a hearing for the debtor to show cause why he should not be held in contempt for violating a prior state court order requiring him to execute a mortgage of his interest in property to secure a state court judgment against the debtor in favor of his former wife. The district court affirmed the bankruptcy court decision that the contempt proceeding did not violate the automatic stay, despite the fact that the contempt proceeding clearly was within the scope of several subsections under section 362(a). In *In re Montana*, 185 B.R. 650, 652 (Bankr.S.D.Fla.1995), the debtor's contempt lay in his refusal to pay support obligations previously ordered by the state court. Although the bankruptcy court lifted the automatic stay, the Court appears to have held that the state court's "determination of contempt and incarceration [of the

debtor] were not violations of the automatic stay, but acts of the State Court attempting to enforce its own orders". To the extent that *O'Brien* and *Montana* stand for the proposition that coercive contempt proceedings to compel conduct by a debtor within the scope of section 362(a) are not subject to the automatic stay, this Court believes those decisions are erroneous and declines to follow them.

In short, Ms. Moon has cited no authority which is persuasive to this Court on the question whether Ms. Moon's contempt proceeding and the Probate Court's contempt order are subject to the automatic stay. Both the proceeding and the order clearly fall within the scope of subsections (1), (2) and (6) of 11 U.S.C. § 362(a) and are stayed by the statute.

### The exception to the automatic stay in section 362(b)(2)(B)

■ As noted by this Court at the preliminary conference on September 20 and again at the hearing on September 26, Ms. Moon's invocation of the exception under section 362(b)(2)(B) raises extremely serious jurisprudential and philosophical questions with regard to the contempt order. Accordingly, it is appropriate to reiterate here that this Court expresses no view as to the legal validity of the contempt order and assumes that that order is lawful and proper under the law of the Commonwealth of Massachusetts. This Court's consideration of the contempt order is solely in the context of the interpretation of the federal Bankruptcy Code.

Section 362(b)(2)(B) states as follows:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

\* \* \* \* \* \*

(2) under subsection (a) of this section—

\* \* \* \* \* \*

(B) of the collection of alimony, maintenance, or support from *property that is not property of the estate* [emphasis supplied].[4]

---

4. Counsel for Ms. Moon concedes the converse of subsection (B), to wit, that collection of alimony, maintenance or support from property that *is*

property of the estate is not excepted from the automatic stay. It is irrelevant for purposes of this decision whether the order for the payment

Ms. Moon's position with respect to section 362(b)(2)(B), as exposed in her court papers and in oral argument, may be summarized as follows. (1) It is accepted for purposes of this contested matter that the debtor has no assets—indeed, Ms. Moon acknowledges that she has no knowledge of any assets owned by the debtor from which he could pay the $65,000, and an important purpose of the counsel fees sought is to conduct discovery proceedings in the hope of finding assets. (2) It is not claimed that the debtor has acquired any earnings or other property post-petition which is not part of the debtor's estate—indeed, it is not disputed that the debtor is unemployed. (3) It is not claimed for purposes of this contested matter that the debtor has some enforceable power to compel Rev. Moon, the Church or the family trust in Switzerland to pay the $65,000 liability on his behalf.[5]

The property "that is not property of the estate" from which Ms. Moon seeks to collect the $65,000 is property of Rev. Moon, the Church or the family trust in Switzerland. Starkly put, it is Ms. Moon's position that the debtor is incarcerated in order to compel third parties Rev. Moon, the Church and the family trust, over whom she acknowledges the debtor has no legal control, to pay the debtor's obligation for which the third parties have no liability. The proposition is that these third parties have in the past provided the debtor seemingly unlimited funds, and they have the resources to pay the modest obligation set by the Probate Court.

Some may perceive a sort of "rough justice" in the debtor's incarceration, given the unusual facts in this case including the debtor's own conduct, the third parties' unquestioned ability to pay the $65,000 and their past willingness to finance the debtor's extravagant and profligate conduct in sums dwarfing the debtor's unpaid obligation to Ms. Moon. Conceivably, it may even be true (however unlikely) that this debtor's character is of such obduracy that he is prepared voluntarily to remain in prison despite having the ability, apparently attributed to him by the Probate Court, to exercise some power to extract the payment from the third parties. The question, however, does not turn on subjective notions of rough justice, unique to a particular case, or impenetrable inquiry into the debtor's psyche.

The issue is whether the statutory words "collection ... from property that is not property of the estate" can be construed to refer to property of third parties over which the debtor has no objectively discernible control. I conclude that the statute cannot be so construed. At the threshold, it must be perceived as grossly anomalous to hold that an exception confined to *property* would be interpreted as an exception to those portions of subsections (1), (2) and (6) of section 362(a) which apply to and stay actions and proceedings against the debtor *personally*. Far more horrific is the notion that a debtor may be incarcerated in order to extract payment of the debtor's liability from third parties who have no obligation to do so. It simply cannot be supposed that Congress contemplated that the exception in section

---

of $65,000 counsel fees is in the nature of support and therefore nondischargeable under section 523(a)(5).

**5.** In footnote 3 of Ms. Moon's Supplemental Memorandum it is stated that "the Probate Court has made an express finding of fact that the debtor ... has the present and continuing ability to pay his support obligations", and in a letter to the Court dated October 2, 1996 counsel quotes excerpts of statements by the Probate Judge on July 17, August 14 and September 13 purportedly in support of this footnote. It may be questioned whether the Probate Court has indeed made the finding attributed to it in footnote 3, but that is for the parties to argue and the Massachusetts Appeals Court to decide in the pending appeal. It bears repeating that this Court's decision is predicated (i) on the assumed

validity of the contempt order under Massachusetts law (whatever the Probate Court's findings), and (ii) upon the position of Ms. Moon as articulated by her counsel in the written and oral submissions to this Court in this contested matter. Counsel for Ms. Moon has unequivocally acknowledged in response to questions by this Court that, for purposes of this contested matter, there is no claim either that the debtor himself has the resources to pay the $65,000 or that the debtor has any enforceable power to compel any of the third parties to pay this amount on his behalf. The latter acknowledgment makes it unnecessary to address the debtor's argument that the debtor's alleged power to compel payment by third parties, if it exists, is an asset of the estate rendering section 362(b)(2)(B) inapplicable.

362(b)(2)(B) would be implemented by the courts in a manner analogous to medieval practices of debtor's prison and ransom.

The legislative history, referring to the phrase "property that is not property of the estate", states "[t]his will include property acquired after the commencement of the case, exempted property, and property that does not pass to the estate",[6] all of which plainly refer to property *of the debtor.* Similar references appear in every case which has touched upon the meaning of "property that is not part of the debtor's estate." Finally, it does not require an historical exegesis to recognize that the interpretation of sections 362(a) and 362(b)(2)(B) advocated by Ms. Moon is profoundly antithetical to the spirit and philosophy underlying the bankruptcy laws in this country since the enactment of the National Bankruptcy Act of 1898. While the Bankruptcy Code may not be used by a debtor to shield himself from compliance with his obligations, neither may the Code be so construed as to make the debtor's person a pawn in a battle to exact payment from third parties over whose property the debtor does not have control.

For the foregoing reasons, I conclude that Ms. Moon's enforcement proceeding in the Probate Court and the contempt order issued by that court to collect the debtor's pre-petition obligation to pay $65,000 are not excepted from the automatic stay by reason of section 362(b)(2)(B).

### The motion to lift the stay and abstention

■ If the automatic stay is found to be applicable to the enforcement proceeding in the Probate Court and the contempt order, Ms. Moon asks this Court to abstain from exercising jurisdiction, citing *Carver v. Carver,* 954 F.2d 1573, *supra,* and *In re Mann,* 88 B.R. 427 (Bankr.S.D.Fla.1988), or to lift the automatic stay under section 362(d)(1), citing *In re McCray,* 62 B.R. 11 (Bankr. D.Colo.1986), *In re Murray,* 31 B.R. 499 (Bankr.E.D.Pa.1983) and *Carver v. Carver, supra.* In the *Carver* case, the rationale for abstention was articulated thusly:

However, alimony, maintenance, or support are not standard debtor/creditor situations, but involve important issues of family law. Traditionally, the federal courts have been wary of becoming embroiled in family law matters. For that reason, the federal courts generally abstain from deciding diversity "cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification" [citations omitted]. (954 F.2d at 1578)

The application before this Court does not involve a decision upon any of the matters referred to in this passage, and there is no danger of this Court becoming embroiled in any of the family law issues between the debtor and Ms. Moon. The issue before this Court is solely one of bankruptcy law.

In the *Mann* case, the bankruptcy court noted that the debtor's grievance, in his own words, was that "the orders of the [state court regarding alimony or support] are totally unrealistic in light of [the debtor's] reduced income." 88 B.R. at 429. Responding to this plaint, the bankruptcy court said:

If his grievance is valid, his remedy is readily available through the State, from the trial court or, through appeal or extraordinary writ, from the appellate court. This federal court, which must and should accord full faith and credit to the State court's proceedings, has no appellate or supervisory jurisdiction with respect to that court.

Alternatively, if there be any jurisdiction in this court to do so, then pursuant to 28 U.S.C. § 1334(c)(1), in the interest of comity with the State court and in respect for State law, this court abstains from directly or indirectly reviewing or considering the State court's fixing and enforcing the debtor's alimony and child support obligations. (*Id.*)

This Court has not been asked to and will not make any ruling affecting any decision or

---

6. H.R.Rep. No. 595, 95th Cong., 1st Sess., pt. 2, at 342 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6299.

order of the Probate Court respecting alimony, support or any other issue of family law.

This Court's view on abstention and the relevant case law on that subject are set forth in *In re Texaco Inc.*, 182 B.R. 937, 946–947 (Bankr.S.D.N.Y.1995). None of the considerations militating in favor of abstention which influenced the courts in *Carver* and *Mann* is present in this case.

■ In the cases relied upon by Ms. Moon, the considerations which impelled the courts to grant relief from the automatic stay were not materially different from those invoked in support of abstention. Thus, in *Carver v. Carver*, the court said that relief under section 362(d)(1) "should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court." 954 F.2d at 1578. In *In re Murray*, the court modified the automatic stay to permit the debtor's wife to proceed before a state court master "to obtain an adjudication of the awards of alimony, counsel fees and costs, maintenance and support of their children, and by permitting the plaintiff to seek collection of such awards from the debtor's non-exempt property or from property acquired by the debtor after the case had been commenced." 31 B.R. at 501. In *In re McCray*, the debtor's former wife moved for relief from the stay to enable her to collect past-due support payments by garnishment from the debtor's post-petition wages. The court held that a debt for past-due child support obligations may not be included in a Chapter 13 plan. Accordingly, the court concluded that the former wife "will not have to object to confirmation, but will be awarded relief from the stay immediately, as the bankruptcy code 'may not be used to deprive dependents, even if only temporarily, of the necessities of life' [citation omitted]." 62 B.R. at 12. None of these cases is analogous to the instant case. Ms. Moon is not seeking relief from the stay in order to obtain adjudication of alimony, support or other family law issues in the Probate Court, nor does she seek to collect the $65,000 out of post-petition assets of the debtor (for which purpose it would be entirely proper to lift the stay), conceding that there is no basis to assert that the debtor has any post-petition property. The sole discernible purpose of lifting the stay at this time in this case would be to perpetuate the debtor's incarceration with the object of extracting the $65,000 from third parties, a purpose not countenanced under federal bankruptcy law.

Important policy considerations of the federal bankruptcy laws relating to the automatic stay mandate that this Court exercise the jurisdiction conferred upon it by Congress. As the Circuit Court said in *Carver v. Carver*:

> Where the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation, and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim. (954 F.2d at 1580)

■ The "purposes of the automatic stay provision" would most certainly be served by enforcement of the stay in this case. Based upon the factual predicates acknowledged by Ms. Moon in this Court (*viz.*, the debtor himself is incapable of paying the $65,000 and he has no enforceable power to compel any third party to pay this amount on his behalf), no purpose is served by the debtor's continued imprisonment other than as a means to coerce payment from third parties. As pointed out by debtor's counsel, the debtor's release from jail is essential to the administration of his Chapter 7 case in this Court so that he may fulfill his obligation to gather information in response to the trustee's demands and appear for examination pursuant to section 341 and, perhaps, Bankruptcy Rule 2004, none of which he can do if confined. An important purpose of the automatic stay is to free debtors from state court process for the collection of pre-petition debts in order to facilitate the rehabilitation and "fresh start" objectives of the bankruptcy laws. In arguing that rehabilitation and fresh start are of no concern here because the debtor has filed under Chapter 7 rather than Chapter 11 and because the $65,000 is non-dischargeable (an issue not yet resolved), Ms. Moon cavils too lightly with these fundamental and broadly based objectives of the federal bankruptcy laws. Everyone in this

case acknowledges that this debtor is desperately in need of both personal and economic rehabilitation, and that objective cannot be obtained in prison. Nor can this debtor be expected to earn money to pay his nondischargeable debts in a jail cell. In the last analysis, the philosophy underlying the automatic stay embodies a rejection of the ancient practice of debtor's prison as a means of debt collection, and a recognition that in our society even the most profligate debtor is entitled to begin life anew.[7]

### *Conclusion*

For the reasons stated above, the Court reaches the following conclusions:

A. The continued prosecution of the contempt proceeding initiated by Ms. Moon to compel payment of the $65,000 awarded by the Probate Court in its February 28, 1996 order and the continued enforcement of the contempt order by incarceration of the debtor constitute a violation of 11 U.S.C. § 362(a)(1), (2) and (6).

B. Section 362(b)(2)(B) of Title 11 is not applicable as an exception to the automatic stay on the facts of this case.

C. No "cause" has been shown to lift the automatic stay under 11 U.S.C. § 362(d)(1), and no reason appears for this Court to exercise its discretion to abstain pursuant to 28 U.S.C. § 1334(c)(1).

Accordingly, the debtor's motion under 11 U.S.C. §§ 105 and 362(a) is granted. Ms. Moon shall be enjoined from further prosecution of the contempt proceeding pending in the Probate Court, and she shall take such action as may be appropriate and necessary to obtain an order of the Probate Court releasing the debtor from incarceration. No request for sanctions under 11 U.S.C. § 362(h) has been made, and none will be granted by this Court for Ms. Moon's persistence to this date. Counsel for the debtor will settle an order consistent with this deci-

sion on three days' notice by fax to counsel for Ms. Moon.

---

**7.** Of course, a debtor may deprive himself of the benign objectives of the bankruptcy laws and subject himself to incarceration by state or federal courts if guilty of criminal acts before or after filing a petition in the bankruptcy court, or contumacy not implicating section 362(a). No such issue is before the Court at this time.