### In re Trever DILL, Debtor.

### No. 03–10959–RGM.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 3, 2003.

Klinette H. Kindred, Law Office of Robert Weed, Alexandria, VA, for Debtor.

H. Jason Gold, Wiley, Rein & Fielding, LLP, McLean, VA, trustee.

### MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The issue presented in this case is whether the debtor's former spouse violated the automatic stay or the discharge stay by initiating and prosecuting a contempt proceeding in state court asserting the debtor's failure to pay a joint credit card obligation as required by their property settlement agreement which was incorporated into their final decree of divorce.

#### Prior Proceedings

The parties entered into a property settlement agreement that was incorporated into a final decree of divorce entered by the Circuit Court of Prince William County, Virginia, on January 7, 2002. Transcript of September 16, 2003 Hearing ("Tr.") at 10–11. Among other things, the parties agreed not to incur any further

obligations on any joint accounts. Tr. at 10. One credit card account, the Discover Card, was not closed. The debtor made additional charges after January 7, 2002.[1] Decree, ¶ 1.

Ms. Dill, the creditor, did not know of the debtor's additional charges until November 2002 when she tried to purchase a new car. Tr. at 10. She testified that after she found out about the obligation:

> I contacted Discover. They let me know that, as a matter of fact, they didn't have any record of Trever Dill being on the account at that point, even though he was—which has been a big deal for me with Discover Card. And I asked them if there was any way to close the account. They said that no because it was a joint account and that I owed the money.

Tr. at 11. She began her research in January 2003 and wrote a letter to Discover in February 2003. Tr. at 13. The debtor filed a voluntary petition in bankruptcy under chapter 7 of the United States Bankruptcy Code on February 27, 2003. Her counsel continued his direct examination of her:

Q At some point, then, Mr. Dill filed for bankruptcy and then were you contacted by the Discover creditors?

A Yes. I've been contacted by them and their lawyers ever since.

Tr. at 11–12. She sought legal counsel from bankruptcy attorneys. The direct examination by her attorney continued:

A ...I contacted many of them to see what I could do as my right as a creditor, and they said that there

was nothing I could do because, since he was being—

Q That was in regard to the child support?

A Right.

Q And they—

A Because Discover was joint, so he wasn't holding me as a creditor for Discover. It was because he owed me child support.

Tr. at 12. She continued to be called by Discover.

Q Then you decided to try to seek a remedy, so you could demonstrate to the creditors—

A Yes.

Q —"This isn't [my] fault," so to speak.

A Yes.

Q And is that why you chose to go to the Prince William County court to file for—

A Yes, that was—I was told that was my only option. And this was before he filed.

.    .    .    .    .

Q And so, basically, you found that, you know, the only remedy that you could have to demonstrate to the creditors is to show that you, at least, were not responsible, as best as you could, was to go to the circuit court where your divorce was filed and file a motion for show cause as to why he should not be held in contempt for making charges to an account where he promised that he would not; is that correct?

---

1. Debtor's counsel suggests that he also agreed to indemnify Ms. Dill and hold her harmless for any costs incurred if he did not pay the bill. Tr. 3. There was, however, no evidence of this agreement and the Decree of Civil Contempt of Court found only that the debtor violated the January 7, 2002 order because he "made charges on a Discover Credit Card issued jointly to the parties and which Complainant [Ms. Dill] is being held responsible for charges made thereon." Decree, ¶ 1. This court will proceed only on the basis articulated by the Circuit Court in its written order.

A    That is correct.

Tr. at 13–14.

The debtor filed a voluntary petition in bankruptcy under chapter 7 on February 27, 2003.  Ms. Dill filed a verified Motion for Order to Show Cause Why the Defendant Should Not be Held in Contempt of Court in the Circuit Court of Prince William County on March 2, 2003. Amended Motion for Sanctions for Violation of the Automatic Stay, ¶ 4 (Docket Entry 14); Answer, ¶ 4 (Docket Entry 21).  The matter was heard on June 6, 2003.  The circuit court found that the debtor made charges on the jointly issued Discover Card in violation of that court's order of January 7, 2002 and held him in civil contempt of the court.  Decree, ¶ 1.  The operative paragraph of the decree stated:

2.    The Defendant . . . shall be confined and imprisoned in jail unless he shall be sooner discharged by due process of law;

Provided, however, that execution of this sentence shall be stayed on the condition that the Defendant . . . purge himself of his contempt by taking the following actions:

(a) Paying to the Complainant the sum of $3847.00, which represents payment owed toward the balance of the Discover Card; and

(b) Paying to the Complainant, the sum of $750.00, which represents the costs of this proceeding, including reasonable attorney fees.

Decree, at ¶ 2.  A further hearing was set for four months hence, October 10, 2003, to determine whether the debtor had purged himself of his contempt of court.  Decree, at ¶ 3.  The decree was endorsed by Ms. Dill's attorney as "I ask for this."  Decree, at 2. It was not endorsed by the debtor or any counsel on his behalf.

The debtor filed his petition on February 27, 2003.  Ms. Dill was scheduled on Schedule E, Creditors Holding Unsecured Priority Claims" with a claim of $1,200.00. The description was "Child Support."  She was also listed on Schedule H, Codebtors, as a codebtor on Discover Card. Ms. Dill received the notice of the filing of the case and of the first meeting of creditors which was mailed by the clerk of this court on March 2, 2003.   Notice of Meeting of Creditors.  (Docket Entry 6).  She sought legal advice concerning her rights in light of the bankruptcy filing.  Tr. at 12.  No objection to the dischargeability of any debt was filed.  The debtor was granted a discharge on June 12, 2003.  Discharge Order (Docket Entry 15).

### *Positions of the Parties.*

The debtor asserts that Ms. Dill violated the automatic stay imposed by § 362 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). She knew that the debtor had filed a petition in bankruptcy but, nonetheless, sought to enforce a prepetition debt.

Ms. Dill, while acknowledging that she knew the debtor had filed bankruptcy, presented several defenses.  First, she asserts that this court lacks jurisdiction over this matter.  Answer, ¶ 1 (Docket Entry 21).  She then raises three defenses: that the she was not a creditor as to the Discover Card obligation because "[u]ntil such time as the Circuit Court in Prince William County heard evidence of the violation of its court order on June 6, 2003, no money was due either party to the other" (Answer, ¶ 3);  that "this matter originated after [the debtor's] bankruptcy, after acquired debt, and thus not a matter to be considered in the current bankruptcy petition" (Answer, Prayer for Relief 2);  and that she was "not collecting . . . a debt, but only seek *[sic]* a remedy from [the debtor] and to be held harmless from his actions in violation [of] a Separation Agreement."

(Answer, ¶ 8). Ms. Dill's attorney summed up her position:

> Our position, Your Honor, as we have claimed, is that Ms. Dill was not seeking to recover a debt; she was seeking a remedy, as was her right, per the agreement and per the court order that was entered in the Prince William County Circuit Court as a consequence of the divorce. The court did find him in contempt of court. They were not asking to collect the debt; they were asking him to be fined in reference to the contempt of the court for not obeying the court order.

Tr. at 15–16.

### *Discussion.*

The first question is jurisdiction. This court has jurisdiction under 28 U.S.C. §§ 1334(a) and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district under 28 U.S.C. § 1409(a).

■ This court has jurisdiction to determine whether there has been a violation of either the automatic stay under 11 U.S.C. § 362 or the discharge stay under 11 U.S.C. § 524. While the two stays serve slightly different purposes, they are both central to the Bankruptcy Code. Both provide the means for enforcement of the relief granted by the Bankruptcy Code. Without the means to protect the estate during the time that it is being administered by the court or to enforce any discharge granted, the relief provided by the Bankruptcy Code would be of little moment. Ms. Dill confuses this court's jurisdiction—its ability to hear the matter—with her right to defend her actions by asserting that they were not within the ambit of the automatic stay. While Ms.

Dill can defend herself by asserting that she violated neither § 362 nor § 524, she cannot prevent this court from inquiring into whether she violated either § 362 or § 524. The result of the inquiry does not determine whether the court had jurisdiction to conduct the inquiry in the first place.

Ms. Dill raises three defenses. Before discussing them, it is helpful to review the automatic stay and the discharge stay. The applicable provisions of the automatic stay, §§ 362(a)(1) and (6), provide:

> Except as provided in subsection (b) of this section, a petition filed under ... this title ... operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> .    .    .    .    .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

The discharge stay is contained in § 524 of the Bankruptcy Code. Section 524 provides:

> (a) A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived

■ The debtor's motion for sanctions was filed on June 10, 2003, two days before his discharge was granted. The automatic stay is temporary. It terminates, except as to property of the estate, when the debtor is granted a discharge.[2] Bankruptcy Code, § 362(c)(2). The actions complained of by the debtor—the filing of the show cause motion in the circuit court and the hearing on it—both occurred before the automatic stay was terminated on June 12, 2003. Section 362 is, therefore, the proper predicate for that portion of the sanctions motion.

The debtor's motion sought sanctions for a violation of the automatic stay. At the time the motion was filed, the debtor had not been granted a discharge and the discharge stay was not a proper predicate for the motion.[3] However, on June 12, 2003, the debtor received his discharge and the automatic stay ripened into a discharge stay. The circuit court entered its Decree of Civil Contempt of Court on June 12, 2003.[4] Thus, to the extent that Ms. Dill's actions preceded the discharge, they will be examined in light of § 362 and to the extent that they followed the discharge, they will be examined in light of § 524.[5]

■ The first defense is that Ms. Dill was not a creditor. The thrust of this argument is that the debtor did not owe her any money until determined by the circuit court on June 6, 2003, more than four months after the filing of the petition. This argument is without merit. A "claim" for bankruptcy purposes is defined in § 101(5) which states:

(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liqui-

---

**2.** More precisely, the stay under § 362(a) terminates, except as to property of the estate, on the earliest of the time the case is closed, the case is dismissed or an individual is granted a discharge or denied a discharge. 11 U.S.C. § 362(c).

**3.** At trial, there was minor skirmishing about whether the state court knew if the discharge had been granted. The state court could not have known that a discharge had been entered because the hearing preceded the granting of the discharge. That issue is, however, irrelevant. The relevant issue is whether the creditor knew of the filing of the petition, which she did.

**4.** It is unclear whether the contempt order was entered before or after the discharge was granted and, thus, whether this act was taken while the automatic stay was in effect or the discharge stay was in effect. The applicable provisions of the automatic stay and the discharge stay are virtually identical. The one aspect that is not statutorily identical is § 524(a)(1) which voids all judgments without

regard to when they are obtained, to the extent that the judgment is a determination of the personal liability of the debtor with respect to a discharged debt. Thus, § 524(a) voids a judgment obtained before the filing of the petition, during the pendency of the case or after the case is closed. While there is no similar provision in § 362—it would be premature to void a judgment until it is known if the debtor will obtain a discharge—most courts have held that an action taken in violation of the automatic stay is void and without effect. 3 Collier on Bankruptcy (15th ed. rev., 2002), ¶ 362.11[1].

**5.** Neither party raised this distinction in their pleadings or at the hearing. Both proceeded as though the automatic stay were applicable to the entire period of time. To limit the debtor's motion only through June 12, 2003 when the automatic stay terminated would require needless duplication of effort and expense by both the parties and place form over substance. Neither party is prejudiced by construing the motion to also allege a violation of the discharge stay after June 12, 2003.

dated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

Ms. Dill and the debtor were joint obligors on the Discover Card. The debtor improperly charged purchases in violation of the property settlement agreement. He was in breach of the agreement between them from the moment he improperly used the credit card, and she had an immediate right of action against him for his breach.[6] This is a claim for bankruptcy purposes even though Ms. Dill had not commenced an action or reduced it to judgment before the debtor filed bankruptcy.[7] It falls within § 362(a)(1) and (6) as a claim that "arose before the commencement of the case."

■ The second defense is that the obligation now owed by virtue of the Decree of Civil Contempt of Court arose on June 6, 2003, after the bankruptcy was commenced. Therefore, it is outside the scope of § 362(a). Even if this argument were accepted,[8] it overlooks the actions Ms. Dill took prior to the June 6, 2002 hearing. She commenced a judicial proceeding against the debtor to recover the amount of her damages arising from the debtor's prepetition breach of the property settlement agreement which was incorporated into the final decree of divorce. Section 362(a)(1) does not depend on the form of the action to collect a prepetition debt, only that a judicial action or proceeding is commenced or continued. It expressly includes the issuance or employment of process. This defense cannot be sustained.

■ The last defense is that she was not collecting a debt, but merely seeking a remedy for the debtor's breach of the property settlement agreement. That is a distinction without a difference. Seeking a remedy is, by any other name, an act to collect a prepetition claim. Bankruptcy Code, § 362(a)(6) (prescribing "any act to collect ... or recover" a prepetition claim). The automatic stay prevents a creditor from initiating any judicial action, without regard to the nature of that action, the remedy sought or the label attached to it. Bankruptcy Code, § 362(a)(1).

The defenses raised by Ms. Dill are not sufficient as presented in her answer or at the hearing. However, they do contain elements that if repackaged raise questions that should be addressed before the court determines whether Ms. Dill is in

---

**6.** There is an indication in the record that the circuit court did not assess the entire credit card balance against the debtor but required Ms. Dill to pay a portion. The record is not sufficient to determine the basis for this apparent ruling. It may be that the charges were incurred before the agreement was made, or after the agreement but before the final decree of divorce was entered. In the latter case, there may have been a breach of the property settlement agreement but no violation of the final decree of divorce.˙ There may have been other reasons. It does not affect the resolution of this matter.

**7.** Ms. Dill testified that she found out about the breach in November 2002 and began researching her options before the debtor filed bankruptcy.

**8.** The argument cannot be accepted. The contempt order did not create a new debt, it sought to coerce the debtor into paying the obligation that arose from his breach of the property settlement agreement. The order Ms. Dill's counsel drafted requires the debtor to pay $3,847.00, "which represents payment owed toward the balance of the Discover Card." Decree, at ¶ 2(a).

contempt for having violated the automatic stay or the discharge stay.

■ The first question is the nature of the debt. While Ms. Dill testified, and her counsel argued, that there was no debt arising from the debtor's prepetition breach, there was, in fact, a claim. She acknowledged this in the common use of the term when she testified that she was researching her rights but had not yet pursued them. The question, though, is not whether there was a claim but whether it was in the nature of alimony, maintenance or support. *Cf.* 11 U.S.C. §§ 523(a)(5) and (15). If it is in the nature of alimony or support, collection is permitted because it is excluded from the automatic stay to the extent that collection is effected from property that is not property of the estate. Bankruptcy Code, § 362(b)(2)(B). It would also not be discharged and would, therefore, not be included within the discharge stay. In such circumstances, Ms. Dill would not be in contempt of this court.

The debt is not in the nature of alimony or support and is not within § 523(a)(5). The breach of the property settlement agreement obviously occurred after the parties entered into it. There was no obligation to be breached before that. The fair inference from Ms. Dill's testimony is that there was no modification of any support obligation after she discovered the breach. Consequently, the support obligation must have been made without regard to the amount the debtor subsequently charged. The covenant not to further use joint credit cards is fairly typical in property settlement agreements and is an independent covenant not in the nature of alimony or support. The obligation was within § 523(a)(15) but the creditor did not seek to hold it nondischargeable notwithstanding her knowledge of it. The obligation was, therefore, within the ambit of § 362(a). It was also discharged by the discharge order entered on June 12, 2003, and within the ambit of § 524.

■ The more interesting question relates to the relationship between state contempt proceedings and the automatic stay. At least two decisions from this court have addressed this relationship and held that a contempt order that upholds the dignity of the issuing court does not violate the automatic stay, but one merely vindicating the private rights of private litigants does violate the automatic stay. *In re Dunham*, 175 B.R. 615 (Bankr.E.D.Va.1994) (Tice, J.); *In re Rook*, 102 B.R. 490 (Bankr. E.D.Va.1989) (Bostetter, C.J.) *aff'd* 929 F.2d 694, 1991 WL 42446 (4th Cir., April 1, 1991) (unpublished opinion).

*Rook* is particularly instructive. The Fairfax County Circuit Court entered two contempt orders. The first order found the debtor in contempt for his failure to comply with a prior decree in his divorce case. The order "prescribed the applicable term in the County jail, [but] expressly provided that such sentence was *suspended* pending the payment of all sums due." *In re Rook*, 102 B.R. at 494. The debtor was given 60 days to comply with the order. If he failed to do so, the punishment would be reviewed by the court. This order was entered prior to the debtor filing his bankruptcy petition. The debtor failed to purge his contempt and a second order was entered that finalized the punishment. The court held that the first order was "an attempt to exact certain behavior from the debtor, specifically the payment of sums due his former spouse." *Id.* at 494. The automatic stay applied to this order. However, it did not apply to the second order because that order was solely for the purpose of vindicating the dignity of the circuit court.

In *Dunham,* the debtor failed to answer all interrogatories propounded to him and

to turnover documents to a commissioner in chancery. *In re Dunham*, 175 B.R. at 616. He also testified falsely under oath at the commissioner's hearing. The contempt order permitted the debtor to cure his contempt by providing the documents and testifying truthfully but incarcerated him until he complied. The maximum period of incarceration was set at five months. The bankruptcy court, following the analysis in *Rook*, found that order was a punitive order entered to uphold the dignity of the court and did not violate the automatic stay. *Id.* at 617.

■■■■■ These cases establish that there is no bright-line test that necessarily differentiates an acceptable punitive contempt order from an unacceptable coercive contempt order. All of the facts and circumstances must be considered. Generally, if the contempt order seeks to vindicate the private rights of the litigants by holding the specter of punishment over the head of the recalcitrant party, it will be considered a coercive contempt order that is stayed by the automatic stay. If, however, it is intended to punish the recalcitrant party for past misconduct and thereby vindicate the dignity of the issuing court, it will be considered a punitive contempt order and not be stayed by the automatic stay.

> Civil contempt serves to vindicate the private rights of a party to litigation. The penalty assessed against a party under a civil contempt order compensates the other party to the litigation or operates to coerce compliance with a court order for the other party's benefit. *In re Newman*, 196 B.R. [700], 703 [(Bankr.S.D.N.Y.1996)]. An order which by its terms permits the debtor to avoid punishment by complying with the court's directive is a civil contempt order. *In re Moon*, 201 B.R. 79, 84 (Bankr.S.D.N.Y.1996). Criminal con-

tempt orders, on the other hand, serve to sanction offenses against public justice and to compel respect for court orders, rather than to enforce the rights of a party. *In re Newman*, 196 B.R. at 704 and cases cited therein.

> Courts determine whether a contempt order is civil or criminal not by how the order is denominated (if, indeed, the issuing court even labels the order as civil or criminal), but, rather, by examining the provisions of the order itself and its surrounding circumstances. *See, e.g., In re Rook*, 102 B.R. at 493–494. A contempt order that permits the contemnor to mitigate or avoid punishment by taking action consistent with the vindication of the rights of another party to the litigation is considered a civil contempt order. A contempt order that, on the other hand, incarcerates a party for a definite period of time or imposes another penalty, without any provision for purge of the contempt, does not serve to redress a private right and is considered a criminal contempt order. *In re Moon*, 201 B.R. 79, 85.

*In re Maloney*, 204 B.R. 671, 674 (Bankr. E.D.N.Y.1996).

In this case it is clear that the creditor sought and obtained a coercive contempt order to vindicate her private rights. Her answer and her testimony show that she sought a remedy to benefit herself. The contempt order provided that remedy. The amount to be paid to the creditor was the amount due to her plus her attorney's fees as provided in the property settlement agreement and represented "payment owed toward the balance of the Discover Card." Decree, at ¶ 2(a). The monetary provisions are not denoted as a fine or penalty. Payment was the condition to avoid imprisonment. Any money paid by the debtor was to be paid to her. No money was to be paid to the state. The

threat of imprisonment was stayed for four months to permit the debtor to comply with the payment requirement. There was no fixed or definite period of incarceration. Imprisonment was to be open-ended, until the debtor paid the money to his former spouse. The proceeding was commenced by the creditor, not by the court or a public official. There is no evidence or indication that any public official attended or participated in the June 6, 2003 hearing. The creditor was awarded a fee for her attorney who brought the action. Her attorney drafted the order and labeled it "civil contempt." There are no prior orders imposing any conditional punishment. The period within which the debtor may purge himself has not expired and the punishment has not been fixed. The object of the order was to obtain payment for the creditor, not to punish the debtor. It is a classic coercive order, not a punitive order.

The circumstances surrounding the entry of the contempt order reflect the creditor's intent to obtain payment of the discharged obligation.[9] She acted after having consulted with several attorneys who advised her that she had no remedy. Nonetheless, on advice of her present counsel and with full knowledge of the filing of the bankruptcy petition, she commenced the contempt proceeding with the intent to collect a prepetition claim. This was a violation of the automatic stay imposed by § 362(a) of the Bankruptcy Code. The automatic stay terminated on June 12, 2003 but was replaced with the discharge stay. Her continued actions to collect her prepetition debt violated the discharge stay.[10]

Julia Dill will be held in contempt of this court for commencing, prosecuting and continuing the contempt proceeding in the Circuit Court of Prince William County, for seeking to collect on a prepetition debt and continuing the proceeding to recover a discharged debt. §§ 362(a)(1), 362(a)(6) and 524(a)(2). The matter will be continued to a later date for the imposition of sanctions. One factor that will be taken into account is whether she has purged herself of the contempt. In order to purge herself of her contempt, she must forthwith cause the Decree of Civil Contempt of Court entered on June 12, 2002, to be vacated and she must dismiss, with prejudice, her motion to show cause.

---

**9.** Her testimony that she only wanted to show Discover Card that she was not at fault for the charges is not convincing. Discover Card is indifferent to which joint cardholder makes a charge. Both are liable. It is true that as between the debtor and herself, the debtor was, prior to his discharge, responsible for paying those charges. However, no private agreement between them, even sanctioned by a divorce court, alters their agreement with Discover Card in which they agreed to be jointly liable for the debt. Discover Card retained the right to pursue them together, either one separately or both sequentially. Similarly, her testimony that Discover Card would not close the joint account is surprising in these circumstances. One would expect Discover Card to immediately close the account so it is not caught in the middle of a domestic matter. What would not be surprising, is if Discover Card refused to *release* Ms. Dill from the joint liability.

**10.** The discharge had an additional effect. The contempt order was void whether entered before or after the discharge order because it was entered in violation of either the automatic stay or the discharge stay. However, if the contempt order were not void, the discharge would have had the effect of voiding it, whenever it was entered. Bankruptcy Code, § 524(a)(1).